*Middlesex,*
July, 1839.

The Philadel-
phia Loan Co.
*v.*
Towner.

| 13 | 249 |
| 64 | 247 |

THE PHILADELPHIA LOAN COMPANY *against* TOWNER
and another.

The validity and interpretation of contracts made and to be performed in an-
other state, are to be determined by the *lex loci contractus.*

By the settled construction in *Pennsylvania* of the statute of that state relating
to usury, a contract embracing a usurious consideration, is not void ; and
the plaintiff in a suit on such contract may recover the principal and legal
interest.

Where a corporation established by the legislature of *Pennsylvania* was au-
thorized, by its charter, to loan money, and charge interest thereon at a rate
not exceeding six *per cent. per annum ;* it was held, that the intention of
the legislature was, to place such corporation on the same footing as to
usurious contracts as the citizens of that state were, under the general law.

Therefore, where a suit on a note given in *Pennsylvania,* to such corporation,
as security for a loan of money there made, on which usurious interest was
taken, was brought in this state ; it was held, that such note was not void,
either by the general law of *Pennsylvania,* or by reason of the restriction as
to interest in the plaintiffs' charter.  [One judge dissenting.]

Where it was provided in the charter of a corporation established for the pur-
pose of loaning money, that " nothing therein contained should be construed
to authorize the company to discount notes, or exercise any banking privile-
ges whatever :" it was held, that the taking of a note for the sum loaned, and
the receiving of the interest on that sum in advance, for the period of the
loan, was thereby prohibited ; and there could be no recovery on a note thus
discounted.

Where the contract and the security combined form one entire transaction, if
the security be illegally taken, the court will no more aid the party to recover
upon the money counts, than upon the security itself.

But where there was originally a legal consideration, and afterwards an instru-
ment was taken as security, which was void, on account of illegality ; such
void instrument will not impair the original contract.

Therefore, where a corporation having power to sue and be sued and to loan
money under certain restrictions, made a loan, and afterwards took a note
as security in contravention of the provisions of its charter ; it was held, in a
suit on such note with the money counts, that although there could be no
recovery on the note, the money loaned, with the legal interest, might be
recovered on the money counts.  [One judge dissenting.]

Where such corporation received goods of the defendant, as security for money
loaned, which goods were not pledged or disposed of in the manner required
by the charter ; it was held, in an action for the money loaned, that the de-
fendant could not set off the value of such goods, as goods sold and delivered.

THIS was an action of *assumpsit* on a promissory note,
with counts for money had and received, and money paid,
laid out and expended.  The note was dated at *Philadel-
phia,* the 31st of *March,* 1837, for 8984 dollars, payable to

Middlesex,
July, 1839.
───────
The Philadel-
phia Loan Co.
v.
Towner.
the order of the plaintiffs, thirty days after date, without grace. The plaintiffs were described as a corporation, duly created by the legislature of the state of *Pennsylvania,* located at and doing business in the city of *Philadelphia.* The defendants were *Reuben H. Towner,* of *Middletown,* in this state, and *Solomon A. Marsh,* of *Philadelphia,* partners, under the firm of *R. H. Towner & Co.*

The defendants pleaded *non assumpsit,* with notice that they should give evidence of usury in the consideration of the note, and should claim a set-off of the indebtedness of the plaintiffs to them for goods sold and delivered and for money had and received.

The cause was tried at *Haddam, October* term, 1839, before *Waite,* J.

The plaintiffs introduced evidence of their act of incorporation, by the legislature of *Pennsylvania,* and of their organization under it; of the execution of the note in suit; and of various advances and loans made by them to the defendants, down to the 5th of *November,* 1836, and the renewal notes down to the note in suit. The act of incorporation was approved the 31st of *March,* 1836. By the 2nd section, the corporation was enabled to sue and be sued, plead and be impleaded in all courts of record and elsewhere; also to purchase, hold, sell or convey any estate or property, real or personal, for the use, occupation and benefit of said corporation: provided, that the real estate to be holden by the corporation should be such only as should be requisite for immediate occupation, in the transaction of its business; and provided, that the corporation should not, directly or indirectly, deal or trade in buying or selling any goods, wares or merchandize whatever, except in receiving and disposing of the same in the manner thereinafter mentioned, when truly pledged to the corporation for loans.

The 7th section contained the following provisions: " It shall be lawful for the said company to loan money, in any sum or sums from one dollar upwards, on pledges of goods and chattels and other securities, to be deposited with the company, as security therefor; and to charge all reasonable expenses incident to the same; and an interest not exceeding six *per cent. per annum:* provided however, that nothing contained in this act shall be construed to authorize said company

to discount notes; and provided, that this corporation shall issue no notes or bills of credit, or promissory notes in the nature of bank notes, or exercise any banking privileges whatever."

The 8th section was as follows: " It shall be the duty of said company to use all reasonable diligence and care in the preservation of all articles, goods and chattels whatsoever, which shall be pledged and deposited with them ; and when any article or articles shall be pledged as aforesaid, the same shall be appraised, by the proper officer of said company, who shall then deliver to the person pledging such article or articles a certificate, signed by them, and dated on the day of its delivery, which shall contain a description of the article or articles pledged, as nearly as may be, with the appraised value thereof, and shall specify the sum of money borrowed, the time of re-payment and the lawful rate of interest, together with the name of such borrower ; a duplicate of which receipt shall be kept in the books of the company."

By the 12th section, it was provided, that " if any article or articles, so pledged as aforesaid, shall remain unredeemed at the expiration of the period of the loan made thereon, it shall be lawful for the said company to sell the same at public auction, by a licensed auctioneer, after having given at least two weeks previous notice of the time and place of such sale, in two of the daily newspapers published in the city or county of *Philadelphia*."

It appeared, that the signature of *R. H. Towner & Co.* to the note in suit, was in the hand-writing of the defendant, *Marsh.*

The plaintiffs claimed to recover of the defendants the amount of said note and interest, deducting therefrom the net proceeds of the sale of certain personal property of the defendants, which had been deposited with them as security for sundry advances made by them to the defendants, and forming the consideration of the note.

The defendants claimed, that with the exception of a small part of the goods pledged for the loan of 750 dollars, they had not been legally pledged to the plaintiffs ; as no evidence was furnished that an appraisal and certificate had been made and delivered to the defendants, as required by the charter. The defendants also claimed, that said property had not been rightly

Middlesex,
July, 1839.

The Philadel-
phia Loan Co.
v.
Towner.

disposed of by the plaintiffs, as property of the defendants, pledged and sold pursuant to the charter. The defendants also claimed, that said note was never executed by the firm; it having been executed upon a usurious consideration, by the defendant, *Marsh*, without the assent of *Towner* to such usurious consideration; and that said note was void, by reason of usury contained therein, as set forth in their notice; which was in violation of the statute of *Pennsylvania*, passed in 1723, and of the provisions of the charter. The plaintiffs' counsel read sundry decisions of the supreme court of *Pennsylvania*, that the act of 1723 does not make void an usurious contract, but that the amount actually advanced, with lawful interest, may be recovered thereon. It was not denied, by the defendants, that such was the construction given to that statute in *Pennsylvania ;* and that said note was executed and made payable in that state.

The defendants, in proof of their claim of usury and illegality, read in evidence the account with them, rendered by the plaintiffs, accompanied with evidence to prove that the item of $1029 in the debit side of the account, consisted of a charge for storage of $6.92, and that the residue thereof was for the balance of interest computed pursuant to agreement, at the time of the advances therein specified, after the rate of eighteen *per cent. per anuum ;* and that for the balance stated in the account a note was executed, by *Towner*, in the name of the firm, for the same amount as the note in suit, dated *December* 1st, 1836, payable to the plaintiffs in sixty days, without grace, in which interest was included for the sixty days, at the rate of twenty-four *per cent. per annum ;* that on the 30th of *January*, on the 1st of *March*, and on the 31st of *March* following, renewal notes were successively executed for the same amount, each payable in thirty days, without grace; and that interest was paid on each of said notes for the time it had to run, after the rate of twenty-four *per cent. per annum ;* the last of said renewal notes being the note in suit. All these notes, except the first, were signed by the defendant, *Marsh*, in the name of the firm.

The defendants claimed, that the court should instruct the jury, that if they should find the facts to be as claimed by them, the law was so, 1st, that said note being executed on a usurious consideration, in violation of the *Pennsylvania* statute

of 1723, by the defendant, *Marsh*, could not be deemed the act of the firm, so as to bind the defendant, *Towner*, without proof that he had authorized or assented to the same : 2. That said note was void, as in violation of said statute of 1723 ; and that whatever may have been the decisions in the state of *Pennsylvania*, the courts in *Connecticut* will not lend their aid to enforce a contract, which was prohibited and illegal in the state where it was made : 3. That the plaintiffs could exercise such powers only as were expressly, or by necessary implication, granted them, in their act of incorporation ; and that the note in question was not taken in pursuance thereof, but was in direct violation of the provisions contained therein, prohibiting the plaintiffs from taking more than six *per cent.* interest on their loans, and also prohibiting them from discounting notes, and was, consequently, void : 4. That upon the facts claimed to be proved, the plaintiffs were not entitled to recover on the money counts for any advances made by them on agreements for usurious interest.

Middlesex, July, 1839.

The Philadelphia Loan Co.
v.
Towner.

The court did not instruct the jury in the manner claimed by the defendants, but left the question of fact respecting the execution of the note by the defendants, to be decided by the jury.  Upon the evidence adduced with respect to the claim of usury, the court instructed the jury, that as the contract was made, and to be executed, in the state of *Pennsylvania*, the construction of the contract was to be according to the laws of that state ; and as it appeared by their laws, that a note in which usurious interest was embraced, was not void under the statute of 1723, and that the creditor, notwithstanding such usury, might recover the amount justly due him, with legal interest, if the jury should find the facts claimed by the defendants to have been proved respecting usury, the contract was not, on that account void, but the plaintiffs had a right to recover the moneys actually loaned, with lawful interest ; and that the defendants had a right to set off against the same such excess of interest over six *per cent.* as they had paid to the plaintiffs in the renewal of the notes ; and that the plaintiffs were not precluded from a recovery, by the provisions in their act of incorporation.

The defendants further introduced evidence to prove, that they had deposited with the plaintiffs divers goods to a large amount, as security for the several loans made by the plain-

Middlesex,
July, 1839.

The Philadel-
phia Loan Co.
v.
Towner.

tiffs; but that such goods had not been pledged agreeably to the provisions of the act of incorporation, inasmuch as no appraisal and certificate had been made and delivered to the defendants; and that the plaintiffs afterwards sold these goods, but not according to the requirements of the charter, and for less than their true value. And therefore the defendants, not intending to recognize the plaintiffs as their agents in the sale of the goods, or to claim the proceeds of such sales as made in their behalf, but expressly disclaiming the same, insisted, that they had a right to charge the plaintiffs with the *value* of such goods, as for goods sold and delivered to the plaintiffs, and to set off the same against any debt which might be proved by the plaintiffs.

The plaintiffs admitted, that certain goods had been deposited with them, but not to the amount claimed by the defendants; and claimed, that they were legally pledged, by the defendants, as securities for the moneys loaned and embraced in said note; and that afterwards, they had been legally sold, by the plaintiffs, in consequence of the non-payment of the moneys loaned to the defendants. And the plaintiffs further claimed, that the jury might apply, in reduction of the amount due on said note, the net proceeds of all such sales; and prayed the court so to instruct the jury.

The court, upon this subject, instructed the jury, that they might apply in payment of said note the net proceeds of all sales legally made by the plaintiffs of the goods pledged by the defendants, as security for the payment of the moneys embraced in said note; but that if the plaintiffs had sold the goods deposited with them by the defendants, they were not chargeable for the same, as for goods sold and delivered to them by the defendants, without any evidence that such sale had been made to the plaintiffs; and consequently, the jury had no right to set off the *value* of such goods, as goods sold and delivered to the plaintiffs: that the defendants might, if they chose, charge the plaintiffs with all moneys received by them upon the sale of the defendants' goods, whether legally made or not; but as the defendants had expressly declined so to charge the plaintiffs, the jury ought to apply, in reduction of said note, only such moneys as they should find that the plaintiffs had received upon sales legally made of goods pledged to them.

The jury returned a verdict for the plaintiffs to recover of the defendants the sum of 5231 dollars, 77 cents, damages ; and thereupon the defendants moved for a new trial.

*R. S. Baldwin* and *Wightman*, in support of the motion, contended, 1. That if the payee of this note and the plaintiff in this suit were a natural person, he could not recover, because the contract was unlawful where it was made.   A contract made in another state, which, by the laws of that state, is legal, our courts, from a principle of national comity, will, if policy does not dictate otherwise, enforce.   But if the contract was prohibited, by the laws of the state in which it was made, it would rather seem to be a breach of comity in our courts to enforce it ; and they will not lend their aid for that purpose ; especially, if the contract is illegal here, as well as there. *Chitt. Contr.* 536. 538.   *Seidenbender* & al. v. *Cearles's* admr. 4 *Serg. & Rawle* 151. 159.   *Langton* & al. v. *Hughes* & al. 1 *Mau. & Selw.* 596.   *Scott* v. *Gillmore*, 3 *Taun.* 226. *Bensley* & al. v. *Bignold*, 5 *Barn. & Ald.* 335.   *The United States Bank* v. *Owens* & al. 2 *Pet.* 527.   *Robinson* v. *Bland*, 2 *Burr.* 1082, 3, 4.   *Biddis*, admr. v. *James*, 6 *Binn.* 321.   *Terry* v. *Olcott*, 4 *Conn. Rep.* 442.   2 *Kent's Com.* 457, 8. 461. (3rd ed.)   By the *Pennsylvania* statute of the 2nd of *March*, 1723, it is enacted, that " no person shall, directly or indirectly, for any bonds or contracts, take, for the loan or use of money, or any other commodities, above the value of six pounds for the forbearance of one hundred pounds or the value thereof, for one year, and so proportionably for a greater or lesser sum."   In this case, usurious interest was reserved and " *taken.*"

2. That this corporation, as such, had no power but such as its charter granted, either expressly or by necessary implication ; but the charter not only granted no power to make this contract, but expressly prohibited it.   The corporation has, in this case, violated the law of its being, first, by reserving and taking usurious interest ; and secondly, by discounting notes : it can loan money only upon *pledges.*   See 7th and 8th sect. *Broughton* & al. v. *The Manchester Waterworks Company*, 3 *Barn. & Ald.* 1. 9.   *The New-York Firemen Insurance Company* v. *Ely* & al. 5 *Conn. Rep.* 560.   2 *Cowen* 679. *Life and Fire Insurance Company* v. *Mechanics Fire Insurance Company*, 7 *Wend.* 31.   2 *Pet.* 530.

*Middlesex,*
July, 1839.

The Philadelphia Loan Co.
*v.*
Towner.

3. That a set-off of the *value* should have been allowed as for goods sold and delivered.  *Hill* v. *Perrott,* 3  *Taun.* 274.  *Biddle* & al. v. *Levy,* 1 *Stark. Ca.* 20.   2 *Stark. Ev.* 875. (last ed.)

4. That there could be no recovery on the money counts. *Hammond* v. *Hopping,* 13  *Wend.* 505.

*Hungerford* and *Barnes,* contra, contended, 1.  That the note in suit was not void, by reason of usury.   First, the contract was made and was to be performed in *Pennsylvania ;* and must, therefore, be governed, as to its nature, construction and effect, by the laws of that state.  *Story's Conf. Laws* 75. 201.   *Sherill* v. *Hopkins,* 1  *Cowen* 103.   *Van Schaick* v. *Edwards,* 2 *Johns. Ca.* 355.   *Grant* & al. v. *McLachlin,* 4 *Johns. Rep.* 34.   *Smith* v. *Mead,* 3 *Conn. Rep.* 253.   *Medbury* v. *Hopkins, Id.* 472.   Secondly, this note was not void, by the *Pennsylvania* statute of 1723.   That statute does not declare an usurious contract to be void ; and by the uniform construction put upon it, by the courts of that state, the contract is not void.  *Wycoff* v. *Longhead,* 2 *Dall.* 92.   *Turner* v. *Calvert,* 12 *Serg. & Rawle,* 46.   Thirdly, it was not void, by the act of incorporation.   This must receive a construction conformable to the laws of the state upon the same subject.  It cannot be intended, that the legislature designed to place the plaintiffs in a worse condition than that of other money lenders.   The words of the charter are not stronger (if so strong) than those of the act of 1723.

2. That the note is not void, by reason of its having been discounted.   The prohibition in the charter, was intended to prevent the corporation from discounting notes in any manner, except upon pledge of goods, and thus to exclude the ordinary operations of banking.   But the lending of money is the very purpose of the act ; and to deny the power of discounting commercial paper secured by a pledge of goods, is to render the grant nugatory, or at least very inconvenient.  *Utica Insurance Company* v. *Bloodgood,* 4 *Wend.* 652.   *New York Firemen Insurance Company* v. *Sturges,* 2 *Cowen* 664.

3. That the plaintiffs are, at least, entitled to recover on the money counts.   The statute of 1723, upon the most unfavourable construction, operates upon the security, and not upon the

contract. *Barnes* & al. v. *Hedley* & al. 2 *Taun.* 184. The
*Utica Insurance Company* v. *Scott*, 19 *Johns. Rep.* 1. 7.

   4. That the claim of the defendants in regard to the goods
pledged, is inadmissible. They charge the plaintiffs with a
tort in converting the goods; but a tort is not a subject of set-
off. *Sherman* v. *Ballou*, 8 *Cowen* 304. If they have any
grievance of this sort, their remedy is trover, or some action
sounding in tort.

   WILLIAMS, Ch. J. The first question presented is, can the
plaintiffs recover upon this note? To this two objections are
made: that it is usurious; and that it is discounted contrary
to the charter.

   There is no dispute but that the note is usurious: is it
therefore void? As it was made in *Pennsylvania*, and the
parties all reside there, except one, who was sometimes there,
and sometimes in this state, the contract must receive its con-
struction from the laws of *Pennsylvania*. *Smith* v. *Mead*, 3
*Conn. Rep.* 253. *Medbury* v. *Hopkins, Id.* 472. And by
the uniform construction of their statute, a note or contract
embracing an usurious consideration, is not void; and the
plaintiff may recover the principal and legal interest. *Wy-
coff* v. *Longhead*, 2 *Dal.* 82. *Turner* v. *Calvert*, 12 *Serg.*
& *Rawle*, 46.

   It is said, however, that although this is the general law of
that state, as it regards the contracts of individuals; yet, as the
act of incorporation under which the plaintiffs derive all their
power, forbids the taking of usury, this contract must be void.
Upon this point, we regret that we have no direct decision of
the courts of *Pennsylvania*. We must conform our decision
to the opinions of those courts in similar cases; and when we
consider, that there is a well settled construction given to their
statute of usury, by which it is made in effect to read, that if
usury is taken or reserved in a contract, it shall not violate the
contract itself, but there shall be no recovery for the usurious
part; it would seem that when usury was prohibited in this
act, and no special declaration as to its effect, it must have been
intended to place this company on the same footing as to usuri-
ous contracts as other citizens were; and that the same results
would follow as in other cases of usurious contracts.

   If it be asked, if this was all that was intended, why was

Margin notes:
*Middlesex,*
July, 1839.

The Philadel-
phia Loan Co.
*v.*
Towner.

*Middlesex,*
*July, 1839.*

The Philadel-
phia Loan Co.
*v.*
Towner.

the subject alluded to at all in the charter? We answer, that as a general power was given to this company to loan money upon pledges, it was very proper expressly to declare that this should not authorize the taking of usury. This is common in bank charters. In this state, most, if not all, the bank charters prohibit the taking of more than six *per cent.*, and leave the effect to be determined by the general law. It has never been claimed, that a construction was to be given to such contracts, different from that given to a similar one made by an individual. And such, we suppose, is the true construction to be given to that part of the charter of the company; and that this note, like all other usurious notes in *Pennsylvania*, is good; but no recovery can be had for a sum exceeding the principal and legal interest.

But it was also claimed, that upon principles now well settled, no contract made in violation of an existing law, can be enforced in a court of justice; but the parties will be left to their own course. This, as a general principle, has been often recognised. *The United States Bank* v. *Owens* & al. 2 *Pet.* 527. *Bartle* v. *Nutt*, admr. 4 *Pet.* 184. *Terry* v. *Olcott*, 4 *Conn. Rep.* 442. But where from the law itself it is apparent, that the legislature intended its violation should be attended only with certain consequences, the court will, as in all other cases, carry into effect that intent; as in statutes against gaming,—where the legislature, in one section, makes the security only void, and in another, the contract, as well as the security. The court, by this marked difference of expression, have supposed, that the legislature intended a milder punishment in the one case than in the other. *Robinson* v. *Bland*, 2 *Burr.* 1080. So in construing the statute of 1723 regarding usury, the courts of *Pennsylvania* have relied upon the different phraseology of that statute and the statute of *Anne*, from which they have inferred, that a less penalty was intended, and that the unlawful interest was to be deducted. *Turner* v. *Calvert*, 12 *Serg. & Rawle* 46. Now, if in such cases, the general principle above alluded to were to be applied, the consequence would be, that the court would, in this way, adopt all the rigours of the statute of *Anne*, which the courts of *Pennsylvania* have declared was intended to be avoided, by the terms of their statute. This would be to make their statute and the decisions under it, *felo de se.* Such a course can-

not be justified upon any principle of comity. Without, there-
fore, saying, as was said by the supreme court of the *United*
*States*, in *Fleckner* v. *The Bank of the United States*, 8
*Wheat.* 355. that the taking of usury, though it may be a
cause of forfeiture of its charter, could not be taken advantage
of, by the defendants; we think, that the laws of the state of
*Pennsylvania,* do not admit the construction claimed by the
defendants.

It was also claimed, that this note was void, because given
in violation of that part of the charter prohibiting this company
from discounting notes. Th eclause alluded to, is, that noth-
ing in this act contained shall be construed to authorize said
company to discount notes, or exercise any banking privileges
whatever. On this part of the case, the facts are; that on the
1st day of *December*, 1836, a note was taken for the same
sum as the note in suit; that it had been renewed several
times, and in each case, the interest was paid or secured; and
that the note in suit was the last of these renewal notes. The
question is, was this a discounting of notes? It was formerly
held, that the reception or reservation of interest in advance,
was usury. *Barnes* v. *Worlick, Cro. Jac.* 25. *Yelv.* 31.
1 *Bulstr.* 17. *Noy* 41. This rule has been relaxed in modern
times, as it respects bills of exchange and banking transac-
tions. *Lloyd,* q. t. v. *Williams,* 2 *W. Bla.* 793. *Floyer* v.
*Edwards, Cowp.* 112. *The Manhattan Company* v. *Os-
good,* 15 *Johns. Rep.* 168. And although the discounting of
notes or bills, in its most comprehensive sense, may mean lend-
ing money and taking notes in payment, as is said in 2 *Cow-
en* 699.; yet it is believed, that in its more ordinary sense, the
discounting of notes or bills, means advancing a consideration
for a bill or note, deducting or discounting the interest which
will acrue for the time the note has to run. The taking of
interest in advance is called discount; as where Lord *Alvan-
ley* says: "If discount be taken upon an advance of money
without the negotiation of a bill of exchange, it will amount to
usury;" (3 *Bos. & Pul.* 158.) or as where Lord *Kenyon* says:
"The defendant did not receive all the money which was due,
upon the note—the discount was deducted;" (6 *Term Rep.*
699.) and in the case before cited of *Fleckner* v. *The Bank of
the United States,* the supreme court say: "Nothing can be
clearer than that, by the language of the commercial world

*Middlesex,*
*July, 1839.*

The Philadel-
phia Loan Co.
*v.*
Towner.

and the settled practice of banks, a discount by a bank must, *ex vi termini*, mean, a deduction or drawback made upon its advance or loan of money upon negotiable paper, or other evidence of debt, payable at a future day, which is transferred to the bank." 8 *Wheat.* 350, 1.   When then, by their charter, the power to loan is given, but the power to discount notes is denied, it is apparent that the term *discount* must have been used in its more limited and common acceptation, more especially as the company are prohibited from the exercise of banking privileges.   The discounting of notes, by receiving the interest in advance for the time they have to run, being one of the peculiar privileges of a banking company, we cannot doubt that this was one of those privileges that the legislature intended this company should not possess.   The plaintiffs, then, having repeatedly discounted the notes of these defendants, and the very note in question, they have done it not only without authority from the charter, but in direct violation of its terms.   And although every such note is not declared void, yet we see nothing in this branch of the case to take it from the general rule before alluded to ;—nothing indicating a different intent on the part of the legislature.   We are, therefore, of opinion that there can be no recovery upon this note.

But as under the charge of the court, the plaintiffs could have recovered no more than the moneys advanced, with lawful interest, deducting illegal interest received, we see no reason for a new trial, provided the plaintiffs could recover upon the money counts.   To a recovery upon these counts, it was objected, that the plaintiffs are only authorized, by their charter, to loan money upon pledges ; and as a corporation can act only in the mode pointed out in their charter, called the law of their being, this company are not authorized to loan except upon pledges, and to recover through or by means of these pledges ; and the case of the *New York Firemen Insurance Company* v *Ely* & al. 5 *Conn Rep.* 560. is cited.   The first answer to this objection, is, that it was not made in the court below.   Pledges were taken.   It was upon the subject of damages, objected, that these pledges were not *legally* taken ; but no question of this kind was made below.

But if it had been, we think it could not have availed the defendants.   It is not like the case cited.   There, the court held, that the corporation could not loan money.   It was not

constituted for that purpose.    It was an *insurance company.*    *Middlesex,* July, 1839.
The right to loan was neither expressly nor impliedly given. ⸺
But here the great object in view was, to constitute a *company* The Philadelphia Loan Co.
*to loan money.*    This its name imports ; and the words of the    *v.* Towner.
7th section expressly confer the power.    " It shall be lawful for
said company to loan money, in any sum or sums from one
dollar upwards, on pledges of goods and chattels and other
securities, to be deposited with the company as security there-
for." It is said, they were to loan on pledges ; by which no
doubt was intended, that it should be lawful for them to loan
to those who had not credit, or could not procure indorsers, but
who could secure the company, by deposites of personal proper-
ty.    They were then authorized to accept goods and chattels
as security for such loans.    Is it any less a loan, because it is
secured by lands or goods, than if secured by an indorser?
The object of an indorsement is the better security of the sum
loaned.    The same object is to be effected, by a pledge of
goods.    The debt exists, in one case as well as the other.    And
where collateral security is taken, whether it be lands, or chat-
tels, or indorsers, we know of no principle upon which the right
of the creditor to resort to the original debtor can thereby be
taken away.    When land is taken, a court of chancery may
direct its sale.    When either goods or lands are taken, the par-
ties may stipulate for the sale.    But no case has been shown
us, where, if the security be inadequate, the party shall be de-
prived of his right to resort to the original debtor, and this upon
the plainest principles of justice and equity ; those principles
which support that class of actions, now so common, for
money had and received.    It is true, that in this charter there
is no express authority given to sue for the moneys they might
loan ; but there is a general power to sue, and a general power
to loan upon pledges.    When, then, the borrower has failed to
comply with the contract to pay, we see no reason why the
lender, having a power to sue, may not exercise that power, in
this case, as well as in any other.    It would seem that this cor-
poration consisted of a company of pawn brokers, constituted
and regulated by law.    And although dealers of this class
generally depend principally upon the pledges they take, we
know of no law or practice depriving them of the benefit of
the personal security of the borrower.    Suppose the article
pawned, had been a stolen article ; or suppose it was stolen

*Middlesex,*
*July, 1839.*

The Philadel-
phia Loan Co.
*v.*
Towner.

from the pawnees without their default, would they have no remedy ?  Or suppose, by a variation in the market, the pledge becomes entirely inadequate, is the lender to sustain the loss ? This would be to say, that the taking of a pledge amounted to *payment.*   Cases of this kind must often occur ; and if all the ordinary principles, which govern cases of this kind, were to be reversed as it respects this corporation, we should expect to see some more certain indications of it, than we have found in this charter.   We see no reason to believe, that the legislature had any such intention.   And in the state of *New-York*, it has been adjudged, that where a corporation was prohibited from discounting notes or taking a particular security, if they made the loan, they might recover the money loaned, although the security was void.   *Life and Fire Insurance Company* v. *Mechanics Fire Insurance Company*, 7 *Wend.* 31.   *The Utica Insurance Company* v. *Scott*, 19 *Johns. Rep.* 1.   3 *Cowen* 20.   3 *Wend.* 583.

It was also objected, that there was no evidence of a loan of money, but that which is derived from the loan itself.   But the account upon which the defendants rely for their evidence of usury, proves this part of the case.   The amount of loans is stated ; and it was not claimed, that the advances which the plaintiffs then claimed, were not made as stated ; except that it is now claimed before this court, that some of the charges of money in the plaintiffs' account were made before this company was incorporated.   After the defendants have recognised this account as a valid debt to this company, by giving their notes therefor, every presumption would be made that these sums had been properly charged in this account.   But we do not feel bound to examine this objection, as it does not appear to have been made in the court below.

Again, we are met with the objection that the plaintiffs, having done an unauthorized and illegal act, in discounting the note, every thing connected with it is illegal ; and the court will no more aid the plaintiffs to recover upon the general counts than upon the note itself.   The general rule, it is truly said, applies not only to contracts immoral in themselves, but to such as are contrary to the policy of the law as against the requirements of a statute or its prohibitions.   *Ribbans* v. *Crickett* & al. 1 *Bos. & Pul.* 264. 266.   *Law* v. *Hodson*, 11 *East* 300.   *Langton* & al. v. *Hughes* & al. 1 *Mau. & Selw.*

593.   *Bartle* v. *Nutt*, admr. 4 *Pet.* 184.   But a majority of the court are of opinion, that this principle is not applicable to this case.   It does apply effectually to those cases where the contract and the security combined form one entire subject ; as if this money had been lent and the note taken at one time, so that it might have been said to be one transaction.   Such was the case of *Bensley* & al. v. *Bignold*, 5 *Barn. & Ald.* 335. That was a suit for paper, and the printing of a pamphlet, without the name of the printer upon the first and last pages, as the statute of 39 *Geo.* 3. *c.* 79. *s.* 27. required.   The Ch. J. says : " The omission to print the name was a direct violation of the statute ; and I am of opinion that a party cannot be permitted to sue either for work or labour done, or materials provided, where the whole combined forms one entire subject matter, made in direct violation of the act of parliament."   So where a loan of money is made, and, at the same time, a note is given therefor, with usurious interest, the lender cannot recover upon the common counts.   *Scott* v. *Nichols*, 4 *Doug.* 314.   But the case is entirely altered, where there was originally a legal consideration, and afterwards a note or bond is given, which is void, on account of usury or some other illegality.   Such void instrument does not impair the original contract.   In *Gray* v. *Fowler* & al. 1 *H. Bl.* 462. a *bona fide* debt existed for malt and bills accepted, most of which were due.   Then the parties entered into a new contract, by which the debt was secured by deed, with usurious interest.   The court were all clearly of opinion, that a fair debt for goods sold &c. still subsisted, unimpeached by the usurious transaction. In *Phillips* v. *Cockayne*, 3 *Campb.* 120. Lord *Ellenborough* says, " if there was once a valid subsisting debt, *that* cannot be destroyed by a void security."   *Parker* v. *Ramsbottom*, 3 *Barn. & Cres.* 257.   These decisions have been followed in *Massachusetts* and *New-York*.   *Johnson* v. *Johnson*, 11 *Mass. Rep.* 359.   *Stebbins* v. *Smith*, 4 *Pick.* 97.   *Swartwout* v. *Payne*, 19 *Johns. Rep.* 294.   *Hughes* v. *Wheeler*, 8 *Cowen* 77.   *Rice* v. *Welling* & al. 5 *Wend.* 595.   *Hammond* v. *Hopping*, 13 *Wend.* 505.   The case of *Cowles* v. *Hart* & al. 1 *Root* 396. does not seem to notice this distinction ; but it was a case before the superior court, at an early period, without examination of authorities.   The principle, however, is not confined to usurious contracts ; for it has been

Middlesex,
July, 1839.
The Philadel-
phia Loan Co.
v.
Towner.

held, that where the parties had agreed to such an alteration in a note, as would render it void, for want of a stamp, the payee might recover upon the original cause of action. *Sutton* v. *Toomer*, 7 *Barn. & Cres.* 416. This principle was recognized in this court, in *Pond* v. *Smith & al.* 4 *Conn. Rep.* 297. 306.

If then the contract to loan was authorized by the charter, we are unable to see how a note, which, as the defendants claim, is void, as contrary to the provisions of the charter, can have the effect of extinguishing the original cause of action, or in any manner contaminating it. In this case, it appears from the account exhibited, that the loans were all made on or before the 5th of *November*, and no note was discounted until the 1st of *December*. This objection, therefore, cannot prevail.

The defendants also claimed a set-off of goods sold and delivered, and money had and received. The goods, they say, they deposited with the plaintiffs, to secure loans made to them ; but they were not legally pledged, as no appraisal was made or certificate delivered, according to the provisions of the act of incorporation ; nor have they been sold agreeably thereto, but for less than their real value. The court below held, that the plaintiffs were not accountable as for goods sold and delivered, without some other evidence of a sale. That in some cases where goods have been illegally taken from the owner and sold, he may waive the tort and bring *assumpsit*, is now well settled. *Lamine* v. *Dorrell*, 2 *Ld. Raym.* 1216. *Hambly* v. *Trott*, *Cowp.* 371. 374. & seq. So where one had seduced an apprentice from his master, it has been held, that his master may sustain *assumpsit*, because it approached very near the last class of cases. *Lightly* v. *Clouston*, 1 *Taun.* 112. *Foster* v. *Stewart*, 3 *Mau. & Selw.* 191. 196. In both these cases, however, the Ch. J. seemed to regret, that the law had not been suffered to take its course. The practice seems to have been introduced with some hesitation, to prevent injustice, particularly in those cases where the action died with the party, and yet his estate reaped the benefit of it ; and seems to have been confined to those cases where the remedy might be beneficial to the plaintiff, and not injurious to the defendant. *Lindon* v. *Hooper*, *Cowp.* 414. *Weston* v. *Downes*, *Doug.* 23. In such cases, says Lord *Ellenborough*, the plaintiff does no more than waive any complaint, with a view to damages, of the tortious act, by which

the goods were converted into money, and takes the net pro-
ceeds as the value of the goods. 10 *East*, 391. Here, the
defendants, not content with the net proceeds, claim as for
goods sold. This has been allowed where the defendant, hav-
ing possession of the goods, could not account for them, when
charged as for goods sold, but by setting up some fraudulent
act of his own; (*Biddle* & al. v. *Levy*, 1 *Stark. Ca.* 20.) as
where a man fraudulently induced the plaintiff to sell goods to
an insolvent person, and took possession of them himself. *Hill*
v. *Perrott*, 3 *Taun.* 274. Whether this could have been
done, if the goods had been stolen, has been doubted; *Bul.*
*N. P.* 130, 1.) and was denied in *Foster* v. *Tucker*, 3 *Greenl.*
458. Certain it is, that the law does not, in all cases, imply a
contract for goods sold and delivered, where they have been
wrongfully obtained from the owner; as where the defendant,
by a false representation, induced a publican to provide for the
support of certain voters, upon the credit of a third person; it
was held, that an action for goods sold would not lie against
him, though an action for deceit might be sustained. *Thomp-*
*son* v. *Bond*, 1 *Camp.* 4.

So where goods were sold on credit, to one who fraudulently
intended, at the time, not to pay for them; it was held, that
this action did not lie, before the term of credit expired, there
being an express contract, though trespass might have been
brought. *Furgerson* & al. v. *Carrington*, 9 *Barn. & Cres.*
59. And where goods were sold, to be paid for, by a bill of
exchange, to be indorsed by the purchaser without recourse; it
was held, that he was not liable in an action for goods sold and
delivered, although at the time he knew the bill was worthless.
*Read* v. *Hutchinson*, 3 *Camp.* 351.

In this case, it is admitted, that the goods were delivered as
security for money loaned. It became, then, the duty of the
plaintiffs, to appropriate them for the purposes for which they
were received. If they expressly agreed to do this, no contract
would be implied. If there was no express contract, the law
would imply that the plaintiffs would hold and appropriate
them to this purpose. If they failed to do this, trover might lie,
or perhaps a suit founded upon the contract which the law
raised thereon. But we do not discover any principle upon
which the law would imply that the goods were sold to the
plaintiffs, contrary to all the facts in the case. Had the defen-

*Middlesex,*
*July, 1839.*

The Philadel-
phia Loan Co.
*v.*
Towner.

*Middlesex,*
*July, 1839.*

*The Philadel-
phia Loan Co.
v.
Towner.*

dants chosen to call upon the plaintiffs for the money, which had been received by the sale of the goods, then indeed they would have waived the tort, and treated the plaintiffs as their agent. But now they claim to waive the tort, but do not affirm the contract the plaintiffs have made, which alone furnishes the defendants with the ground of their claim. No authority is cited for this claim but that of *Studdy* v. *Sanders & al. 5 Barn. & Cres.* 628. There, the principal question was as to the sale of some cider, which had been condemned in the exchequer. The casks containing it were lent to convey the cider, and had not been returned. *Holroyd,* J., in his opinion, says : " I think also, that the action lies for the value of the casks. The defendant had them in use, and has not returned them." If the court mean to say, in that case, that an action for goods sold and delivered would lie for those casks, is it not to be supposed that some notice would have been taken of the case of *Lyons* & al. v. *Barnes,* 2 *Stark. Ca.* 39., decided, a few years before, by Lord *Ellenborough,* where an action for goods sold and delivered was brought for beer sold and the casks in which it was delivered ? The plaintiff having given notice to the defendant, that unless the casks were returned within a fortnight, he should be considered as the purchaser ; Lord *Ellenborough* held clearly, that an action for goods sold and delivered could not be maintained for the casks. They were left in the house on particular terms ; the whole rested in special agreement between the parties ; and that agreement ought to have been specially declared upon. And so well is the principle settled, that eminent counsel treat it as one so clear that they may use it to illustrate another. Thus, in *Foster* v. *Stewart,* above cited, *Scarlett* says, " as well might it be said, that if a man takes the goods of another, the owner of the goods might have *assumpsit* against him for goods sold." This, though no authority, shews how the question was viewed in *Westminster-Hall.* And upon examination of the case of *Studdy* v. *Sanders* & al., it is apparent, that there must have been a count for the loan or hire, as well as the price of the casks ; and probably this gave rise to the remark alluded to.

We think, then, that the judge was clearly right, in the direction which he gave upon this point ; and upon a view of

the whole case, a majority of the court are of opinion, that no new trial ought to be granted.

In this opinion, CHURCH, HUNTINGTON and WAITE, Js., concurred.

SHERMAN, J. I concur in the opinion, that the statute of usury in the state of *Pennsylvania,* upon its admitted construction, presents no objection to the verdict. But there are considerations in the case, upon which, after much hesitation, I am compelled to dissent from my brethren.

The plaintiffs are an artificial person, and have no natural capacities. A natural person, of competent understanding, may make any contract, which is not forbidden by moral or municipal law. An artificial person has no power, except what is given by its charter, to make any contract whatsoever. These principles have been unanimously recognized by this court, and are established by the highest authorities. I therefore consider the original contract for the loan of this money as void, on the ground that the plaintiffs were unable to make such an agreement. See *The New-York Firemen Insurance Company* v. *Ely,* 5 *Conn. Rep.* 564. 567. *The same* v. *The same,* 2 *Cowen,* 678. *The same* v. *Sturges, Id.* 664. *Head & Amory* v. *The Providence Insurance Company,* 2 *Cranch,* 127. 166. 168. 169. *The People* v. *The Utica Insurance Company,* 15 *Johns. Rep.* 383. *Beaty* v. *The Lessee of Knowler,* 4 *Pet.* 168.

The powers of this corporation must be sought in the charter. They are what the legislature meant to confer, and nothing more. Was it intended to authorize, by the charter, a contract, which it expressly forbids? Unless we can answer in the affirmative, we must admit, that the power to make the contract stated, upon the loan in question, was never conferred upon this company. It was for interest at the rate of eighteen *per cent. per annum.* The charter prohibits charging more than six.

If the original contract, on which the loan was made, was void, will the law raise an implied promise to refund the sums lent? If not, there is no ground on which the plaintiffs can recover.

When an infant has made an agreement, for which he is

deemed incompetent, he may, upon its disaffirmance, recover back any moneys which he has advanced. But his disability is intended for his defence, and is grounded on the presumption of his natural incapacity to understand and protect his rights. The law will, therefore, relieve him, in all cases where the agreement is within its provisions. Were it not so, those provisions would be nugatory. But no such principle applies to the case under consideration. Although a corporation has no powers to contract, except such as are conferred by its charter; yet it is presumed to be cognizant of its own attributes, and perfectly to understand the law which gave it existence. With this knowledge, the plaintiffs acted in defiance of that law. They attempted to do, not only what they had no legal power to perform, but what they knew to be expressly prohibited. Shall they now appeal to the violated law, acknowledging that the contract is wholly void, and pray that another promise may be presumed from these circumstances, that they may be relieved, upon the principles of justice and equity, against their own folly and disobedience? I am not aware of any principle upon which such an application can be granted.

The *United States* have no general law regulating the rate of interest; but the charter of the late national bank had this provision: " The bank shall not be at liberty to purchase any public debt whatever, nor shall it *take* more than six *per cent. per annum* for or upon its loans or discounts." The charter nowhere declares the contract void. It is simply prohibitory, like that in question. But in the case of *The Bank of the United States* v. *Owens* & al. 2 *Pet.* 527. 538., upon the second question submitted for determination, the supreme court of the *United States* decided, that irrespective of any usury laws whatever, a violation of the charter, by *agreeing* to take more on a loan than the prescribed rate of interest, rendered the contract wholly void; and that the plaintiffs could recover nothing. Independently, therefore, of the usury laws of *Pennsylvania*, the very conditions of the plaintiffs' charter preclude a recovery in this action.

This is not one of that class of cases, in which, by a legislative act, the security only is made void. Such are those within the statute 9 *Ann. ch.* 14. regarding securities for money won at play. *Robinson* v. *Bland,* 2 *Burr* 1077. *Barjeau* v. *Walmsley,* 2 *Stra.* 1249. Such, also, are the cases contem-

plated by the statute of *New-York*, commonly called the *Restraining Act.* *The Utica Insurance Company* v. *Scott*, 19 *Johns. Rep.* 1. Nor is it of that class, where the original contract, being lawful and valid, may be enforced, notwithstanding a subsequent security given for the same thing, is void for usury or other cause. Here, the original contract was void.

*Middlesex,*
*July, 1839.*
──────
The Philadelphia Loan Co.
*v.*
Towner.

My opinion is, that the verdict ought to be set aside, and a new trial granted.

New trial not to be granted.