The Ohahcellok.
The complainant has exhibited two bills in this court for the foreclosure of two mortgages, given by Silas C. Cook and wife to Peter Miller, and transferred to the complainant by assignment.
The first mortgage, in point of time, bears date on the twenty-third of April, 1843, and was given to secure the payment of three thousand dollars, on the first of April, 1846, with lawful interest thereon annually. This mortgage is upon a farm in the township of Independence, in the county of Warren.
The second mortgage bears date on the nineteenth of April, 1844, and was given to secure the payment of eight thousand three hundred and twenty-five dollars on the first of April, 1855, with lawful interest. This mortgage is upon lands in the township of Greenwich, formerly owned by Martin Ilulsizer, and is designated as the Greenwich mortgage.
The questions in both causes are to some extent identical. The same evidence has been taken and used by consent in both causes, and they have been argued together as one cause.
There is no dispute as to the due execution of either of *60 the mortgages. All the issues raised by the answers, and discussed upon the argument, with a single exception, apply to the Greenwich mortgage. These cover nearly the entire ground of controversy, and will be first considered.
1. .The first objection to the validity of the Greenwich mortgage is, that it was procured by fraud and duress. This point was not pressed by counsel upon the argument, and it appears to be entirely unsupported by the evidence, assuming the whole testimony offered in its support to be strictly true. The charge rests entirely upon the statements of the mortgagor; and from the importance that, he evidently attaches to it, and the great minuteness of detail into which he has entered regarding it, it may be proper to notice its real character. In the spring of 1844, the premises described in the mortgage, together with other real estate, were sold by virtue of a writ oí fieri fiadas issued out of this court for the sale of certain mortgaged premises owned by Martin Hulsizer. Silas O. Cook, the mortgagor, and Peter Miller, the mortgagee, had each a claim against the property, the claim of Miller amounting to five hundred dollars, and being last in order of priority. 0 Before the sale, Cook, being desirous of protecting himself, applied to Miller for a loan of money to enable him to purchase the property, if necessary to secure his debt. Miller agreed to make the loan, if Cook would secure Miller’s claim also. At a sale of part of the property enough was realized to secure Cook’s claim, and the sale of the residue was adjourned. Cook thereupon apprized Miller that he did not want the money, as he had no motive to purchase, his claim being secure. Miller, however, insisted that Cook had agreed to purchase the property and take the loan; that the money for .the purpose had been raised, and that Cook should purchase and secure Miller’s claim also. Cook did purchase, for seven thousand eight hundred and twenty-five dollars, on the tenth of April, 1844. Binding the premises very much out of repair, and having offers for the property at the same price which he bid at the sheriff’s sale, Cook desired to sell, but was dissuaded by Miller, who pro *61 mised to furnish money to make the necessary repairs if Cook would take the title. Thereupon Cook accepted the sheriff’s deed, received the purchase money, seven thousand eight hundred and twenty-five dollars, from Miller, and gave him the mortgage in question for eight thousand three hundred and twenty-five dollars, including the purchase money and Miller’s debt of five hundred dollars. Miller afterwards refused to furnish money to make the repairs, or to take the property off of Cook’s hands. Cook testifies that Miller was a man of wealth and influence; that he had previously loaned him three thousand dollars; that he had aided Cook’s son in business, and that it was his fear of offending Miller, and Miller’s assurance that he would furnish the means to repair the property, that induced him to take the deed in his own name, and to give the mortgage. This is the substance of the charge of obtaining the mortgage by fraud and duress, and substantially quite as strong as it is proved by the witness himself. It shows, assuming it all to be strictly true, that Cook deemed it to be his interest to take the deed and give the mortgage rather than incur the risk of offending a wealthy and influential friend, who might prove highly serviceable to the mortgagor and his family; and that the promise of the friend to furnish the necessary means for making repairs was not performed. The title was taken in Cook’s name, the mortgage was given to Miller-, and they have so remained till this day. There was neither fraud or duress which could impair the title either of the mortgagor or mortgagee.
2. The second ground of defence is, that giving the mortgage for five hundred dollars more than was loaned, in order to secure Miller’s debt against Hulsizer, was a shift or device to take more than six per cent, per annum for the loan of the money, and rendered the mortgage usurious and void.
At the time of the transaction the mortgagor and mortgagee both resided at Easton, in the state of Pennsylvania. The contract was made there. All the negotiations were conducted there. That was the place of the contract, and *62 its validity must be decided according to tbe laws of that state. The fact that the land which was the subject of the contract is in this state will not affect the question. Varick v. Crane, 3 Green;s Ch. R. 128; Cotheal v. Blydenburg, 1 Halst. Ch. R. 17, 631; De Wolf v. Johnson, 10 Wheat. 367.
The answer alleges generally .that the contract was in violation of the statutes against usury. In the absence of a more specific allegation, and of any statement of the place where the contract was made, it must be intended that the defence is, that the contract is in violation of the statutes of this state, and to that objection alone the defence must be in strictness limited. Bennington Iron Co. v. Rutherford, 3 Harr. 467.
If the defence relied on is that the contract is usurious by the laws of Pennsylvania, it was incumbent on the defendant distinctly to aver it in his answer and to sustain it by his evidence. Curtis v. Masten, 11 Paige 15; Cotheal v. Blydenburg, 1 Halst. Ch. R. 19.
But the transaction Was not usurious under the laws of Pennsylvania, admitting that defence to be admissible under the pleading. No part of the five hundred dollars, for which the bond was given over and above the amount loaned, was ever paid or demanded. There is an endorsement upon the bond, signed by the obligee, as follows: “ There is to be deducted from this bond five hundred dollars, being the amount of mortgage or debt on Martin Hulsizer’s mill property due to me, the payment of which was assumed by Doct. Silas O. Cook, and now, April 3d, 1846, have received the interest for two years on $7825, which will be the amount of the within bond after the deduction of the above.”
The motive with which the endorsement was made is immaterial-. There is no pretence that any part of the principal or interest of the five hundred dollars was ever .paid.
The statute of Pennsylvania against usury, which was in force at the date of this mortgage, does not declare the contract void. It enacts that interest above the rate of -six per cent, shall not be taken, and that a person offending against *63 the statute shall, on conviction, forfeit the money lent. Act of 2d March, 1723, Dunlop's Laws (2d ed.) 76.
The contract is not void, and the plaintiff is entitled to recover the sum actually lent, with lawful interest. 2 Dall. 92, Wyckoff v. Loughead; 12 Serg. & R. 46, Turner v. Calvert; 4 Wharton 223, Creed v. Stevens.
Until the lender has received more than legal interest for the sum actually advanced, the offence of usury is not consummated. 4 Watts & Serg. 115, Kirkpatrick v. Houston ; 7 Harris 117, Bristle v. Mehaffie.
If the money had been received, and the usury consummated, the forfeiture could not be enforced in this state. That can only be upon conviction under the laws of Pennsylvania. Philadelphia Loan Co. v. Towner, 13 Conn. 249; Sherman v. Gasset, 4 Gilman 521; Gale v. Kastman, 7 Metc. 14.
Even if the contract were usurious, and the fact were established by the evidence, it does not lie in the mouth of John S. Cook to raise the objection. He purchased the property subject to the mortgage. Its validity was recognised, and the usury waived by the mortgagor at the time of the conveyance. The purchaser of the mere equity of redemption in premises covered by a usurious mortgage, who purchases subject to the lien of the mortgage, cannot set up usury as a defence to the encumbrance. Brolasky v. Miller, 1 Stock. 814; Vroom v. Ditmas, 4 Paige 527.
The mortgagor defends only in the name of his wife, to protect her interest. The defence of usury is not raised to protect his interest. The title of the mortgagor is in John S. Cook, by whom alone the defence is relied on.
"Whether, xrpon the case made by the evidence, the transaction constituted a corrupt agreement to take a higher rate of interest than is allowed by the laws of this state, supposing the contract to have boon made hero, may well be doubted. It is obvious that the transaction may admit of a very different interpretation. It is clear that the defence of usury is not sustained.
*64 3. It is objected that the complainant has no valid title to the mortgages, the assignment being illegal and inefficacious.
The assignment was executed by Samuel Wilhelm, one of the executors of the will in Pennsylvania, and the sole acting •executor in this state. The will was admitted to probate, and letters testamentary granted to Wilhelm, under the provisions of the statute, by the surrogate of the county of War•ren. The assignment is executed with legal formality by a party competent to execute it. The objection is, that the assignment was made upon an illegal consideration and in •execution of a corrupt agreement.
The facts relied upon to constitute this defence are briefly ■these: On the third of March, 1847, Peter Miller, the testator, having his domicil at Easton, in the state of Pennsylvania, died testate without issue, leaving a large real and personal estate. .By his will, he devised the residue of his ■estate, real and personal, in trust for charitable uses, and 'appointed five executors, including Samuel Wilhelm and Silas C. Cook, the mortgagor. Wilhelm was also designated as trustee to receive and collect all moneys due or to become due on account of the estate, and to execute certain duties connected with the trust. All the executors proved the will, and employed counsel for the estate. Soon after the testator’s death, Wilhelm employed an agent to discover and produce the heir-at-law of the testator. Peter Miller, of Ohio, claiming to be a nephew and heir-at-law of the testator, appeared as claimant for the estate. Thereupon an agreement, bearing date on the eighteenth of February, 1848, was entered into between Wilhelm and Miller, by which they agreed, in case the disposition of the residue of the estate by ■the will should be declared invalid, to. divide the residuary estate equally between them.. They also agreed to employ the counsel of the executors to. contest the validity of the devise, and to pay thorn twenty per cent, on the total amount of the real and personal estate which might be recovered for the heir-at-law. These arrangements were secretly made by Wilhelm, while acting as executor, controll *65 ing the funds, and professing to co-operate with the other executors in support of the will. In pursuance of the arrangement, an ejectment was brought in the Court of Common Pleas of Northampton county, in the name of Peter Miller, for the recovery of part of the real estate of the testator included in the residuary devise of the will.
The suit was defended by Wilhelm and the other executors. The plaintiff recovered. On writ of error, the Supremo Court of Pennsylvania affirmed the judgment of the court below, declaring the residuary devise and bequest to bo void, and Peter Miller, the plaintiff, entitled to recover as heir-at-law of the testator. This case is reported in the name of Hillyard v. Miller, 10 Barr. 326.
The title of Miller, as heir-at-law of the testator, being thus established, he presented his petition to the Orphans Court for a citation to the executors to account.
Wilhelm, having exhibited his separate account as executor, and having also exhibited to the court of Common Pleas his account touching the real estate as trustee under the will, the accounts were referred to auditors, by whom they wore restated and reported.
The auditors reported that the agreement between Wilhelm and Miller, of the eighteenth of February, 1848, was obtained by fraud, imposition, and undue advantage of the heir-at-law. They distributed the balance in both accounts, four-fifths to Alexander Miller, the administrator of Peter Miller, of Ohio, (who died subsequent to the agreement with Wilhelm) and one-fifth to the counsel. The court confirmed the report, so far as it resettled the accounts of Wilhelm as executor and trustee, but set aside so much of the same as rejected his claim to share in the distribution. From these decrees both parties appealed to the Supreme Court, by whom the decre e in each case was reversed, so far as it admitted Wilhelm to a distributive share of the personal estate of the testator, and was affirmed as to all else therein contained; and the record was remanded, that distribution might proceed according to law. , The case, in all its phases, will be *66 found in the name of Miller’s appeals and Wilhelm’s appeals, 30 Penn. St. R. 478.
Upon a compromise of the controversy, subsequently made between Alexander Miller,, administrator of Peter Miller, of Ohio, and Wilhelm, it was agreed that Wilhelm should pay, in satisfaction of the amounts due upon his accounts as executor and trustee, fifty-nine thousand dollars, and should also transfer to Miller the Greenwich mortgage now in controversy. The Independence mortgage, for three thousand dollars, was also agreed to be taken by Miller, under the arrangement, as a part of the fifty-nine thousand dollars. In pursuance of this agreement, the assignments were made to Miller, and by Miller to the complainant. It is difficult to perceive what there is in the history of this controversy that can render the consideration of the contract illegal or the assignments invalid. Conceding all that is alleged by the defendant against the good faith of the executor, and of counsel in the conduct of the suit, how does it affect the result of the controversy or the obligation of the defendant to pay his honest debts to the estate ? Conceding that under other auspices the result of the controversy might possibly have been different, it is undeniable that, by the judgment of a court of competent jurisdiction, the residuary devise in the will has been adjudged to be inoperative, and the title of Peter Miller, of Ohio, as the heir-at-law and next of kin of the testator, to the real and personal estate included in the residuary disposition of the will has been established. The assignment of these mortgages has been made in the exercise of rights recognised and established by those judgments. The invalidity of the will and the title of Miller are res adjudieata. Admit that these questions may possibly be agitated in another form by other parties, how can that affect the distribution of property made under a decree of the Orphans Court, the bona fides of the assignment, or the power of the executor to make it? The legal titles to the securities was in the executor, by whom the title was transferred to the complainant. Plaving paid the debt to the *67 legal holder of the mortgage, the mortgagor is not responsible for the faithful administration of the assets or the due appropriation of the funds. There is no charge against him for neglect of duty’ or abuse of trust as executor; and if there was, it could constitute no ground for refusing to pay his debts to the estate.
4. It is claimed that, in taking the account of the amount due upon the mortgage, the defendants shall be allowed the amount of taxes Avhich have been paid by the mortgagor, or his assigns, for the lands covered by the mortgage, chargeable against the mortgage debt since the interest of mortgagees haAre been taxable in this state.
The act of 1854, by which bonds and mortgages and other personal property are made liable to taxation, does not include the bonds, mortgages, stocks, or other dioses in action of persons aaTlo are not inhabitants of this state. The mortgage, at the time of the passage of the act, and ever since, has been held by persons not inhabitants of this state, and is therefore not liable to taxation.
The statute directs that, when the ■ mortgagor does not reside in the same township where the mortgaged premises lie, the tax on the money secured by the mortgage shall be assessed against and paid by the mortgagor in the township where the lands lie, and the receipt of the collector shall be a legal payment for so much of the interest of said mortgage, and be allowed, and deducted therefrom, by the mortgagee. The bill contains no averment that these requirements of the statute have been complied with, and does not show that the mortgagee, or his assignee, if he were an inhabitant of this state, AA’ould bo legally liable for the taxes.
5. Upon the final settlement of the separate account of Silas O. Cook, the mortgagor, as one of the executors of Peter Miller, in the Orphans Court of Northampton county, there was found a balance due him of two thousand three hundred and forty-four dollars and twenty cents, which was allowed and confirmed by the court on the twenty-third of January, 1852. This balance, Avith the interest thereon, the *68 defendant asks to set off against the amount found due upon the mortgage for three thousand dollars upon the farm in Independence. Admitting the claim to be valid, it cannot be set off against the amount due upon the mortgage. The proceedings to foreclose a mortgage are in rem, and not against the person of the debtor. The principles of set-off do not apply. Nothing can be set up by way of satisfaction of the mortgage, in whole or in part, except payment. There must either have been a direct payment of part of the debt, or an agreement that the sum proposed to be set off should be received and credited as payment. Adm’rs of White v. Williams, 2 Green’s Ch. R. 376; Troup v. Haight, 1 Hopkins’ Ch. R. 239; 3 Powell on Mortgages 945, a.
But it is urged that the defendant, as executor, may retain out of the funds in his hands, or from the amount of a debt due by him to the estate, sufficient to satisfy his claim against the estate, either for a debt due from the testator in his lifetime, or for his expenses and commissions in settling the estate, and that this right of retainer will be recognised in equity.
It is by no means clear that this legal right of retainer would be recognised in equity upon a bill for foreclosure against the executor, where it would operate simply as a set-off. I incline to think it will be exercised only where the accounts of the executor are before the court, either on appeal or by original bill filed for the purpose of having a settlement of the account. Williams v. Purdy, 6 Paige 166; Ex parte Meason, 5 Binn. 169; Rogers v. Rogers, 3 Wend. 503 ; Clark v. Clark, 8 Paige 152; Hosack v. Rogers, 6 Paige 415.
The remedy by retainer arises, by mere operation of law, on the ground that it would be absurd and incongruous that he should sue himself, or that the same hand should at once receive and pay the debt. He cannot sue himself, and therefore it is necessary for his protection that he should have the right of retainer.
But .this right of retainer is limited. He can retain for his own debt only in preference to creditors of equal degree. *69 2 Williams on Ex’rs 894. He cannot retain his own debt in case of a deficiency of assets in preference to creditors having claims for funeral charges, physician’s bill during the last sickness, or judgments recovered in the lifetime of the testator, nor can he in such case retain his entire debt to the exclusion of other debts of equal degree. Lenoir v. Winn, 4 Dess. 65.
How is this court, upon a foreclosure bill, to investigate and settle questions of this character ? Assuming, however, that the right of retainer will be recognised upon a proceeding for foreclosure, it must be applied in the same way that it would be by the Orphans Court upon a settlement of the estate. He would be required to pay the entire debt due lo the estate, deducting the amount of his indebtedness. He would not be permitted to pay a part of his debt, aver his inability to pay the balance, and deduct his claim against the estate from the sum paid. He would be compelled, at least, to bear as far as practicable the loss of his own insolvency, and not throw it upon the estate. That is precisely what the complainant voluntarily proffers to do. He proposes to permit this claim of the defendant to be deducted from the amount due upon the Greenwich mortgage, which is not adequate security for the amount due upon it, but is unwilling to credit it upon the Independence mortgage, which is regarded as an adequate security. To this arrangement the defendant objects, and insists that the debt due him shall bo credited upon the Independence mortgage, and not upon the Green-wich mortgage. The sole motive and only effect of this arrangement will be, that the estate shall be compelled to pay the defendant his entire debt, and lose a much larger amount due from the defendant on account of the inadequacy of the security.
There is no equity in the decree asked. The rights of the parties cannot be affected by the assignments from the executor of his claim against the estate to his son, to whom he conveyed the mortgaged premises. The assignee can stand in no better position than the assignor.
*70 The assignee of the mortgage takes it subject to the equities existing against it in the hands of the mortgagee. It appears, moreover, that Miller agreed, on receiving the assignment of the mortgages, to satisfy out of the Greenwich mortgage the balance found due from the estate of Miller to Cook, the executor. In taking the account, therefore, that balance, with interest, will be credited upon the Greenwich mortgage.
There must be a reference to a master in each case to take an account. .