AVERY W. STACY *vs*. FRANK H. BROTHERS.

Third Judicial District, Bridgeport, April Term, 1919.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

The purchaser of a retail liquor business cannot lawfully carry it on under the license issued to and in the name of the vendor, and therefore an agreement between them to that effect is void.

Under such circumstances neither, as a general rule, can recover of the other any part of the consideration advanced or paid under the contract, but the law will leave them where they placed themselves.

Where, however, the parties are not *in pari delicto*, the purchaser having been induced to make the agreement by false and fraudulent representations of the vendor respecting the transfer of the license, the former may, upon discovering the fraud, rescind the contract and recover what he has paid thereon upon restoring to the other party so far as possible all that he has parted with under the agreement.

In the present case, evidence introduced by the plaintiff tended to prove that his purchase of the defendant's liquor business and the rental of the saloon premises were induced by the false and fraudulent representations of the defendant that the liquor-license and business would be transferred to the plaintiff, who intended to continue a retail liquor store on the premises in his own name, as the defendant well knew; that the license was not transferred, as the plaintiff discovered a year later and after he had paid the defendant about $13,500 under the contract, and that after he had refused to make further payments the defendant evicted the plaintiff from the premises and sold out the business and license to a third person for $4,500. *Held:*—

1. That under these circumstances the trial court committed no error in refusing to set aside, as against the evidence, a verdict for the plaintiff for the $8,000 which he had paid to the defendant at the time of making the agreement of purchase, with interest thereon.

2. That the question whether the plaintiff's conduct constituted a waiver of his right to recover, was properly submitted to the jury as a question of fact.

3. That the question of what constituted a reasonable time within which the plaintiff must rescind the contract after discovering the fraud that had been practiced upon him, was one of fact which was properly left to the consideration and determination of the jury upon the conflicting evidence in the case.

The trial court instructed the jury that if they found from the evidence

that the plaintiff was not equally in the wrong with the defendant in respect to the sale and transfer of the liquor license, he would be entitled to recover; but that if he knew, or was chargeable with bad faith in failing to discover, that the license stood in the name of the defendant, he could not recover. *Held* that these instructions were proper and well adapted to the situation in hand, although the charge did not inform the jury that the plaintiff was presumed to know that the law required him to have a license in his own name, and that he was bound to know that fact.

It is well settled that the trial judge may comment upon the evidence bearing upon any point in issue, if he does not direct the jury how to decide the matter.

This court will not feel called upon to order a new trial upon grounds which the appellant has not seen fit to raise, unless it appears from the record that substantial justice was not done.

Argued April 8th—decided July 31st, 1919.

ACTION to obtain the cancellation of a written contract for the purchase and sale of a retail liquor business owned and conducted by the defendant, alleged to have been secured by his fraudulent representations, also for a return of the plaintiff's promissory note given therefor, and for damages, brought to the District Court of Waterbury and tried to the jury before *McGrath, Acting-Judge;* verdict and judgment for the plaintiff for $8,000 with interest from the date of sale, and in addition thereto an adjudication requiring the cancellation of the contract and the return of the plaintiff's promissory note, from which the defendant appealed. *No error.*

The defendant in his answer denied the material allegations of the plaintiff's complaint and made, as a part of his special defense and of a counterclaim filed with the answer, the following averments: The defendant entered into an agreement as alleged in paragraph one of the complaint, which agreement was partly in writing and partly oral. By the oral part of this agreement it was provided that the defendant should retain the license in his own name until the plaintiff

had fully complied with the terms of the written agreement, or had paid the balance due for the transfer, and thereupon the license should be transferred to the plaintiff's name. It was also agreed that the defendant should furnish the plaintiff with a written lease of his premises on Main Street in Waterbury. The plaintiff executed this agreement and also the lease, and entered into possession of the premises under this lease, and of the fixtures, stock and control of the business, and continued to conduct the liquor business in this place for about one year, and to make the payments agreed upon.

The plaintiff demurred to the special defense and counterclaim, because "the matters and agreement stated therein are based upon the illegal sale of spirituous and intoxicating liquors and contrary to the provisions of § 2727 of the General Statutes [1902]." The court below overruled the demurrer to the special defense upon the ground that its allegations, if proven, would be a good defense to the plaintiff's case. That to the counterclaim was sustained for the reasons therein stated.

The plaintiff then filed a denial of the allegations of the special defense. Upon these pleadings the case was submitted to the jury upon the issues involved in the claim for damages by reason of the alleged fraud and deceit of the defendant.

*Francis P. Guilfoile*, with whom, on the brief, was *Edward W. Broder*, for the appellant (defendant).

*Edward B. Reiley*, for the appellee (plaintiff).

RORABACK, J. There was no error in the ruling of the trial court as to the demurrers. The averments of the special defense and of the counterclaim show that there was an agreement between the plaintiff and the defendant to the effect that the plaintiff for

himself should conduct the saloon for the sale of intoxicating liquors, when, as it appears, the defendant was to retain the license in his own name to sell liquors therein. The special defense and counterclaim show that the privilege to sell liquors in this place was personal to the defendant and could only be exercised by him as the licensee. Such being the terms of the agreement between the parties, both the plaintiff and defendant were *in pari delicto* in making a contract which could not form the basis of a recovery by the plaintiff upon the cause of action set forth in his complaint. The general rule as to executed contracts is that if the parties be *in pari delicto* they will be left where they have placed themselves. *Funk* v. *Gallivan,* 49 Conn. 124. For the same reason it follows that the defendant's counterclaim, which was predicated upon this alleged illegal contract, was properly held insufficient by the court below. *Connecticut Breweries Co.* v. *Murphy,* 81 Conn. 145, 148, 70 Atl. 450.

There was no error in the action of the trial court in refusing to set aside the verdict as against evidence. The jury must have found, as the plaintiff offered evidence to prove, that on October 6th, 1916, the plaintiff and defendant entered into an agreement by the terms of which the defendant agreed to sell to the plaintiff his retail liquor business, liquors, license, stock and fixtures for the agreed price of $16,000. This property was purchased by the plaintiff for the sole purpose of conducting a retail liquor store in his own name, which the defendant well knew. The defendant, as a part of this agreement, falsely and fraudulently represented to the plaintiff that the liquor license and liquor business would be transferred to the plaintiff, and thereby induced the plaintiff to pay him the sum of $16,000. The payment was to be made $8,000 in cash and $8,000 by way of a promissory note.

The cash payment was made and the note given. Upon this note $3,888 was subsequently paid, together with $1,750 rent. The defendant refused to transfer the license and the business to the plaintiff as he had agreed to do, and ultimately, after the plaintiff had refused to pay further rent because of the defendant's conduct, evicted the plaintiff and sold the saloon and license to another purchaser. There was evidence offered from which these conclusions could have been reached by the jury as reasonable men.

It cannot be said, as matter of law, that it appears from the evidence that the plaintiff by his conduct evinced his intention to waive and did waive his right to recover of the defendant. This, under the facts presented, was a question of fact, which, under proper instruction, was submitted to the jury.

The same is true, also, of the defendant's claim that the evidence shows the plaintiff was attempting to avoid the contract which he had entered into with the defendant, without offering to return what he had received from the defendant. Upon this subject the jury were instructed as follows: "If you find that the plaintiff is entitled to a verdict, then he is entitled to be replaced, so far as it is possible, in the position which he was in prior to the signing of this agreement with the defendant at the time of the purchase. In other words, he is entitled to be reinstated in that position which he would have been in had he not been induced by these false representations, if you find them to be false, to enter into it. In other words, he is entitled to a return of the consideration with which he parted, which is represented by $8,000 in cash and whatever sum you find he has paid by way of monthly instalments. He is also entitled to interest from the date when the various amounts making up this sum were paid. As against this, he is bound to return to

the defendant, in so far as it is possible for him to do so, the consideration which he, the plaintiff, received from the defendant, that is, the saloon property. In other words, he is bound to return to the defendant the saloon and liquor business which he purchased, together with any profits made therein during the period of his occupancy." These instructions are not criticised by the defendant, and the record does not disclose that the jury mistook or misapplied them in reaching their verdict.

One assignment of error relates to the action of the trial court in reviewing and commenting upon the evidence. The part of the charge thus referred to was immediately followed by a statement of the trial court that if the jury found these facts proven by the evidence, the plaintiff would be entitled to recover. It has been established by repeated decisions of this court that the trial judge may comment upon the evidence bearing upon any point in issue in the case, if he does not direct the jury how to decide the matter. This portion of the charge was well within this rule.

Another assignment of error relates to the instructions of the court as to the plaintiff's duty to exercise diligence in finding out that the license in question had not been transferred to him by the defendant. The plaintiff offered evidence to prove, and claimed to have proven, that owing to the misrepresentations made by the defendant and the deceit practiced by him, he did not ascertain that the license had not been transferred until about one year after the agreement to sell had been made. Upon this branch of the case the jury were instructed, among other things, that "it was the duty of the plaintiff if he would rescind the alleged fraudulent contract to rescind it within a reasonable time after discovering the fraud, if any existed, and what in the circumstances of this case was

a reasonable time, I charge you, is a question of fact for you to consider and determine. The burden of proving that the plaintiff acted within a reasonable time is on the plaintiff." In view of the special circumstances here disclosed, this was not error. *Fox* v. *Tabel,* 66 Conn. 397, 34 Atl. 101; *McLaughlin* v. *Thomas,* 86 Conn. 252, 258, 85 Atl. 370. It appears that upon this branch of the case the evidence was conflicting, and what constituted reasonable time under the special circumstances surrounding this transaction was a question of fact properly submitted to the jury.

The defendant complains of the instructions of the court in failing to charge the jury that the plaintiff must be presumed to know that the law required him to have a license and that he was bound to know that fact. Upon this subject the jury were told that if they found from the evidence that the plaintiff was not equally in the wrong with the defendant in respect to the sale and transfer or want of sale and transfer of said license, he would be entitled to recover in this action; if, on the other hand, the jury believed that both parties knew that the license was issued to the defendant, and that the plaintiff, notwithstanding his knowledge of the fact, on his own account acted as a principal in the business of selling spirituous and intoxicating liquors at the place in question, both the plaintiff and defendant would be equally in the wrong and their alleged contract would be invalid, and the plaintiff could not recover; or, if the jury found that the plaintiff was chargeable with want of good faith in his failure to discover that the license stood in the name of the defendant, he would be chargeable with notice of the defective character of his title to the license, and legally chargeable with the fault that the license had not been transferred to him, and he would in such circumstances be equally in the wrong with the defendant, the alleged contract would be in-

valid, and he would not be entitled to a verdict in this action.

These instructions were proper and well adapted to the situation here presented. Where the parties to a contract which is against public policy or otherwise illegal are not *in pari delicto*, or equally guilty, which they may not be, and where public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue for relief against the transaction, relief is given to him. The cases of this character are generally those wherein the party asking to be relieved from the effect of an illegal agreement, as in the present case, was induced to enter into the same by means of fraud. Here he is not regarded as being *in pari delicto* with the other party, and the court may relieve him. 13 Corpus Juris, p. 498.

This disposes of all the reasons of appeal. There are portions of the charge which, if detached and taken by themselves, might be made the subject of criticism, and certain features of the judgment-file, unexplained as they are by the record, are similarly open to criticism. But no complaint of these matters is made, either in the reasons of appeal or in the argument before us. It by no means appears that substantial justice was not done. The plaintiff has paid the defendant about $13,500, and in the assessment of his damages has been required to account for the profits of the business while he was in possession. The license, which was the item of special value, was never transferred to him. On the trial it appeared that the plaintiff had been evicted from the premises and that the defendant had resold the business to a third party. Under these circumstances we see no occasion for ordering a new trial upon grounds which the defendant has elected not to raise.

There is no error.

In this opinion PRENTICE, C. J., BEACH and GAGER, Js., concurred.

WHEELER, J. (dissenting). The complaint sets forth that the defendant on October 6th, 1916, entered into an agreement by the terms of which he agreed to sell to the plaintiff his retail liquor business, liquors, license, stock and fixtures in a store conducted in Waterbury, for $16,000: $8,000 of which the plaintiff paid in cash, and $8,000 in a note on which he paid $5,446.02; that defendant falsely and fraudulently represented to plaintiff that the license and liquor business would be transferred to plaintiff, and in reliance thereon plaintiff was induced to make this purchase; that defendant refused and neglected to transfer the liquor business and license, and on or about October 1st, 1917, the plaintiff, as soon as he ascertained that these representations were untrue, demanded a return of the $16,000, and offered to release and discharge defendant from any agreement on his part to sell his saloon to him, but defendant refused and still refuses to accept said release and to pay back said sum. The plaintiff claimed (1) $16,000 damages; (2) that the agreement be cancelled; (3) that the note be delivered up and cancelled.

The answer denied the material allegations of the complaint, and made a special defense and counterclaim by the following averments: The defendant entered into an agreement as alleged in the complaint, which was partly oral and partly in writing, as in the exhibit attached. The written part was a conditional bill of sale of the stock of goods and fixtures for the consideration named, with an agreement by the plaintiff to replenish such portions of the stock as should be sold in the regular course of conduct of the liquor business, so that the stock should always be maintained as large as that transferred by the agreement; and the agree-

ment provided that when said sum should have been fully paid, the personal property should become the property of the plaintiff, and he be entitled to a bill of sale of the same.

The special defense and counterclaim further alleged that by the oral part of the agreement it was provided that the defendant should retain the license in his own name until the plaintiff had fully complied with the terms of the written agreement, or had paid the balance due for the transfer, and thereupon the license should be transferred to plaintiff; that defendant should furnish plaintiff with a written lease of the premises; that the plaintiff executed this agreement and also the lease, entered into possession of the premises under the lease, and of the fixtures, stock and business, and continued to conduct the liquor business in this place for about a year, and to make the payments agreed upon; that on or about October 6th, 1917, the plaintiff refused to continue payments on the note and lease, and demanded that defendant repay the moneys the plaintiff had advanced, and did not offer to return the goods to the value of $8,000 which defendant had delivered to him under the agreement, and which he had agreed but failed to keep replaced, and did not offer to surrender the lease and possession of the premises; that the plaintiff retained the stock, fixtures, lease and business for about a year, and used up stock of the value of several thousand dollars, without replacing the same as required by his agreement, and thereby waived his right to rescind the agreement, to have his note cancelled and to have the money paid by him returned.

The statement of the facts offered in proof by the defendant is wholly inadequate to fairly present the case as claimed by him. It is patently clear upon the record that all of the allegations of the special defense were supported by evidence offered by the defendant.

The appeal does not present the question of the correction of the finding, and we must take the statement of facts as the record presents it.

The statement of the evidence offered by the plaintiff is supported by the record, and supports the facts of the complaint. The finding specifically recites: "on said day [October 1st, 1917] the plaintiff also offered to release and discharge the defendant from any agreement on his part to sell him the said saloon, and the defendant refused to accept the said release and discharge. From the said first day of October, 1917, to and including the time of trial, the defendant still refused to accept said release and discharge of the said agreement of sale. . . . Because of the refusal and neglect of the defendant to transfer the said liquor business and license to the plaintiff, the plaintiff was unable to pay his rent and was evicted from the said saloon and said saloon premises. After the plaintiff had been evicted from the said saloon, the defendant again resold the said saloon and license to another purchaser."

These are the only facts claimed as tending to prove that plaintiff offered to restore defendant to the same position he was in prior to the sale. The complaint sets up an action for the cancellation of the agreement and note, together with incidental damages. The special defense was that plaintiff had not restored to defendant the consideration received by him under the agreement. A demurrer to this was overruled, the court observing that it stated a good defense, an obviously correct decision.

The court erroneously instructed the jury that "this action is to recover damages for a loss claimed by the plaintiff to have resulted from the false representations made by the defendant and upon which the plaintiff relied." In other words, that it was an action for fraudulent representations. The measure of damages in such

an action is the rule approved in *Gustafson* v. *Ruste-meyer*, 70 Conn. 125, 137, 39 Atl. 104: "It is now well settled that in actions for deceit or breach of warranty in sales of personalty or realty, the measure of damages is the difference between the actual value of the property at the time of the purchase, and its value if the property had been what it was represented or warranted to be." The court did not so instruct the jury, but gave them another rule of damages. Confusing the, action for rescission with that of fraudulent representation, the court charged the jury: "The plaintiff, among other allegations in his complaint, avers that upon the discovery by him of the claimed fraud, and because of the claimed fraud, he offered to restore the defendant so nearly as could be done to the position occupied by the defendant prior to the negotiations and transactions mentioned in the complaint, and demanded that the defendant restore the plaintiff to the position which he occupied before such negotiations and transactions." This was a complete misconstruction of the complaint. That did not allege an offer to restore, but an offer "to release and discharge him [the defendant] from any agreement on his part to sell said saloon to him." The court was right in placing this allegation among the necessary elements, if this was a case of rescission, and the complaint would have been defective in failing to allege this. But the case submitted by the court was one for fraudulent representations.

Another part of the charge, set forth in assignment of errors two, assumes to detail the facts in evidence, and instructs the jury as follows: "It appears from the evidence that the defendant for more than twenty years was engaged in the retail liquor business and during that period was a licensed retail liquor dealer; that the plaintiff up to the time of the transaction mentioned in this suit was resident without this State; that at the

time of the alleged sale the defendant informed the plaintiff that the defendant was familiar with the methods of procuring liquor licenses in this State; that the plaintiff was not familiar with the laws relating to the procuring and transferring of the liquor licenses; that the defendant assumed the duty of transferring the license to the plaintiff; that the plaintiff paid defendant $750 for the license which he believed would issue and was thereafter informed was issued to him; that the plaintiff did not know that the license was not issued to him until about October 1st, 1917. If you find these facts proven from the evidence, and that the plaintiff was not equally in the wrong with the defendant in respect to the sale and transfer or want of sale and transfer of said license, he would be entitled to recover in this action."

If the action were one of fraudulent representations, then this statement left out of consideration the element of intent to defraud and the reliance upon these representations and the consequent damage. It is true that these elements were referred to in an earlier part of the charge, but in this, the only statement of the facts necessary to be proven to establish the plaintiff's case, they are omitted. If the case were one of fraudulent representations, the charge was wrong and must have been harmful; and if the case be one of rescission, the charge is likewise bad, for it left wholly out of consideration the duty of restoration on the part of the plaintiff, and this was a fact necessary of proof before recovery could be had.

The court instructed the jury that the plaintiff must rescind within a reasonable time after discovering the fraud. That, as applied to a case of rescission, was correct. The court further charged that in the circumstances of this case, what was a reasonable time was a question of fact for them. It appears unquestioned

that the plaintiff ascertained the fraud of the defendant October 1st, 1917. Thereafter, and with full knowledge of the fraud, on November 29th, 1917, he paid $25 to the defendant on the amount due under this agreement, and he paid the November rent. More than this, he continued in possession of the liquor store and conducted the liquor business there and sold in regular course of business the stock of goods in the store, and when the defendant obtained possession of the store on March 5th, 1918, upon execution under summary process (the plaintiff having resisted dispossession in three summary process actions), the larger part of the stock was gone and the business very much diminished. Under these circumstances the plaintiff cannot be held as matter of law to have rescinded his contract with reasonable promptness after discovery of the fraud. *Water Commissioners* v. *Robbins*, 82 Conn. 623, 642, 74 Atl. 938. For five months after knowledge he continued to enjoy the fruits of his conduct. He should be held to have waived by his conduct his right to rescind.

The verdict of the jury necessarily found, as a part of the agreement of sale, the conditional bill of sale, and also that the agreement was induced by the fraudulent representations of the defendant. "The unquestioned rule of law is that a party seeking to avoid a contract on the ground of the fraud of the other party, must offer to return to him whatever he has received under the contract, and thus put him in the same condition in which he was when the contract was made." *Disbrow* v. *Secor*, 58 Conn. 35, 38, 18 Atl. 981. The plaintiff had had placed in his possession, under this conditional sale, the stock of goods and fixtures, and the equipment of and in the liquor store, under agreement to maintain the stock as large as it was at the time of the transfer. The plaintiff continued to conduct the liquor business in this store for about a year, and on October 1st, 1917,

as the jury must have found, ascertained for the first time the fraud practiced upon him. He, on said day, demanded the return of the money he had paid the defendant, who refused to return it; and the finding is that the plaintiff also offered to release and discharge the defendant from any agreement on his part to sell the said saloon. The plaintiff did not offer to turn over the store, fixtures and stock to defendant, and to replenish the stock, or pay for the part of the stock he had depleted; and until he did that he failed to make out a case for rescission of his contract.

In charging as to the measure of damages, the court instructed the jury as follows: "If you find that the plaintiff is entitled to a verdict, then he is entitled to be replaced so far as it is possible to the position which he was in prior to the signing of this agreement with the defendant at the time of the purchase. In other words, . . . he is entitled to a return of the consideration with which he parted, which is represented by $8,000 in cash and whatever sum you find he has paid by way of monthly instalments. He is also entitled to interest from the date when the various amounts making up this sum were paid. As against this, he is bound to return to the defendant, in so far as it is possible for him to do so, the consideration which he, the plaintiff, received from the defendant, that is, the saloon property. In other words, he is bound to return to the defendant the saloon and liquor business which he purchased together with any profits made therein during the period of his occupancy." It is thus seen from this extract that the jury were nowhere told that the plaintiff must return the stock, replenished by the amount used, so that the stock returned should be as large as the stock purchased. The rule of damages, if the case had been one of rescission, was incorrectly given. At the conclusion of the charge the court gave this in-

struction: "In the plaintiff's complaint, gentlemen, you will notice at the end of paragraph 6—the paragraph headed, 'Plaintiff claims, first, $16,000 damages; second, that the said agreement of purchase and sale be delivered up and cancelled; third, that the note referred to above be delivered up and cancelled,—you will have nothing to do with the paragraph headed so. It is only a question of whether or not the plaintiff shall recover damages or whether your verdict shall be for the defendant." With this constant confusion of the issues of damages for fraudulent representations and for a rescission and no adequate or proper rule of damages given, the jury were in no position to consider the case fairly or intelligently.

The court followed the plaintiff's requests to charge pretty largely, and this undoubtedly accounts for the contradictory features of the charge. The verdict was for $8,000 with interest at five per cent from October 6th, 1916, up to date. The verdict followed the submission of the case to the jury as one of damages. The judgment entered was not only for the recovery of the $8,000 damages in accordance with the verdict, but it adjudicated that the agreement entered into on October 6th, 1916, be cancelled and rescinded, and that the defendant deliver and cancel the note drawn by the plaintiff to the order of the defendant on October 6th, 1916. So far as appears on the record no adjudication was ever had of any thing except the element of damages.

Further, the facts upon which these equitable adjudications were made are not recited in the judgment. Their presence in the judgment is not made a part of the appeal, but the impropriety of their being in the judgment is manifest.

This does not exhaust the criticism which could properly be made of this record. But it does, as I

think, show that this defendant has not had a fair trial, and it may be that serious injustice has been done him.

The principal answer to these considerations has been that they are not made a part of the appeal. That is true of the great majority of these. But the court may of its own motion consider an error apparent upon the face of the record, notwithstanding the failure to assign it as a reason of appeal. It ought not to do this when it can see that the judgment is substantially just: it ought to do it when this does not appear and the error is manifest. *Cole* v. *Jerman,* 77 Conn. 374, 382, 59 Atl. 425; *State* v. *Gannon,* 75 Conn. 206, 218, 52 Atl. 727. In my opinion this case is within this rule.

But we do not need to rely upon this as the basis of sustaining the appeal. One of the errors assigned is the refusal of the court to set aside the verdict. There was no evidence before the jury on which to base a verdict for damages for fraud, as there was no testimony of the value of the property transferred as represented and as in fact; and if the case be regarded as one of rescission, there was no evidence of an offer of restoration by the plaintiff.

That part of the charge detailing the facts before the jury, to which we have referred and found erroneous, was assigned as error two.