CATHERINE VASZAUSKAS *vs.* JOSEPH VASZAUSKAS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 11th—decided August 2d, 1932.

*Michael V. Blansfield* and *Herman B. Engelman,* for the appellant (plaintiff).

*Francis P. Guilfoile,* for the appellee (defendant).

AVERY, J.   The plaintiff brought this action against her husband, asking for an accounting of the profits made in their joint business during their married life. She also asked a decree compelling the defendant to convey to her an undivided one-half interest in a farm which she claims was bought by him with their common money; and also asks damages and other relief. The case was tried to the court and judgment rendered for the defendant on the ground that the claims of the plaintiff substantially arose out of illegal business connected with the sale of liquor, and that the court would not enforce an accounting between the parties of profits derived from the conduct of an illegal business.

The plaintiff, in her appeal, attacks this conclusion of the court as not legally supported by the facts found. The finding of the court is to the following effect: The plaintiff and defendant were married in 1905. The plaintiff had about $200 at that time which she had saved, and part of this was used by them to start housekeeping. The defendant also used funds, which he had accumulated, to buy furniture and defray other expenses of housekeeping. Immediately after the marriage, the parties lived in Waterbury. During this time, the husband worked outside and the wife did the housework, attended to the rooms in the house, the washing and cooking, and took in boarders. All moneys were turned over to the defendant under an agreement that they should be kept by him in a bank in their joint names. Shortly after the marriage, the defendant moved to Colorado, and the plaintiff later joined him there, where she again took in boarders, while the defendant worked in the mines, the proceeds received from the boarders being turned over to the defendant on the agreement that he would deposit the same under the joint names of himself and his wife. They returned to Waterbury in 1912, where he worked, for a short time, as a laborer on a tobacco plantation; and then, with their joint funds, he purchased a one-half partnership interest in a legally licensed retail liquor business, located on Bank Street in Waterbury, for the sum of $2000. He conducted this business with a partner for about two years. When the family returned from Colorado to Waterbury, the defendant had about $1200 and to purchase the business he borrowed the sum of $800 on his personal note, endorsed by his partner, which sum he afterward repaid from money earned in the business. After about two years, he sold his interest and from the proceeds, amounting to about $2000, purchased a

one-half interest in a similar licensed liquor business on South Main Street, Waterbury, paying $1600 in cash and assuming one half of a mortgage to a brewing company. Later, he bought out his partner and became the sole owner of the saloon. During the time he owned the one-half interest in the Bank Street saloon, he caused to be delivered to his home, where the plaintiff resided with him, beer which she bottled, washing the bottles and filling the same. The beer was sold by the plaintiff and defendant, and the proceeds were turned over to the defendant. Between 1912 and 1919, the plaintiff and defendant took in, as profits, about $13,440, which sum the defendant agreed would be divided and one half would belong to the plaintiff, and the whole sum would be deposited in their joint names. Shortly after the National Prohibition Law was passed, the defendant, taking part of the proceeds of the business amounting to $10,000, bought a large quantity of whiskey, the money for the purchase of which was taken by him and used without plaintiff's knowledge and consent. He stored this liquor in his own cellar and various other places in Waterbury, and later, after Prohibition came into effect, he sold it, making a profit of $20,000, and with the money purchased mortgages amounting to $35,000, on property in Waterbury, agreeing that the plaintiff owned one half of the mortgages, and that he would cause her name to be placed thereon. In 1922, the defendant purchased a large farm in the town of Middlebury, for which he paid $19,000, and the plaintiff and defendant, with their children, went to live thereon, where she assisted in the conduct of the farm and doing the housework. While on the farm, the defendant continued to make and sell large quantities of intoxicating liquor, promising at various times that all sums obtained, both from the profits of the farm and other

business, would be placed in their joint names, and that she would be entitled to one half of the same. He further told her that he had placed her name on the deed of the farm, giving her a one-half interest therein, which statement was untrue, but was not found to be untrue by the plaintiff until 1925, when she told him that the farm stood in his name alone, and he again promised to see that a transfer of a one-half interest was made to her. This promise was renewed from time to time on the insistence of the plaintiff, but the defendant never fulfilled it. During the entire course of his married life, the defendant, in the presence of numerous persons, agreed that one half of all the proceeds of the liquor business which he was in, which was at that time a legal business, would belong to his wife who assisted him in various phases of the business. From 1922 to 1930, he promised her, on many occasions, to turn over to her one half of all mortgages then in his name, and one half of all moneys on deposit or in banks, as well as a one-half interest in the farm, livestock, personal property and other property thereon, which he did not do. During the time the plaintiff and defendant were married, five children were born of the marriage, she caring for the children, taking care of the house, assisting in the business and doing everything possible to advance her husband's material prosperity. Large profits were made by him in the liquor business, both legally and illegally. He used his wife's services in the illegal operations. How far she was cognizant of the illegality, the court finds that it is unable to say.

Upon these facts, the court concluded that the plaintiff's claims were based on an illegal business connected with the sale of intoxicating liquors and were, therefore, unenforceable; and that the total proceeds from defendant's business, of which the plaintiff sought an

accounting, was so intermingled, the legal and illegal, that the separate source of them could not be traced.

It is unquestionably the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract, but if both parties are in *pari delicto,* the law will leave them where it finds them. *McMullen* v. *Hoffman,* 174 U. S. 639, 654, 19 Sup. Ct. 839, 845. In *Treat* v. *Jones,* 28 Conn. 334, 337, 338, the plaintiff sought to recover compensation for defending the defendant in a criminal prosecution. It appeared that the prosecution originated in a riot which the plaintiff himself partly instigated, among other ways, by promising to defend those who were participating in it. It was held that the plaintiff could not recover. The auditor to whom the case was referred found that the defendant employed the plaintiff to defend him in these prosecutions and the claim was made that the plaintiff was not seeking to enforce an illegal contract, based upon that finding. The court said: "But he is seeking to enforce a contract which *originated* in his own illegal instigation of the commission of a crime, without which instigation that crime mght not have been committed, and so no occasion for the plaintiff's services have arisen. The contract on which the recovery is claimed was incurably vitiated in its origin by the plaintiff's illegal conduct in relation to it, and the groundlessness of the plaintiff's claim is equalled only by his effrontery in bringing it to the notice of the court." In *Funk* v. *Gallivan,* 49 Conn. 124, 129, repeatedly cited in later

cases, the plaintiff having drawn the ticket which entitled him to a certain sewing machine brought trover against the defendant who had taken the machine without right. The plaintiff expressly made the claim that the contract between him and the original owner of the machine was an executed one and however illegal the transaction might have been as between them the plaintiff obtained a title which he could enforce against the defendant. The general principle by which courts refuse their aid to the enforcement of an unlawful contract is discussed and quotation is made from a Massachusetts case (*Myers v. Meinrath,* 101 Mass. 366, 367) wherein it is said that while unlawful contracts are not altogether inoperative because they may be executed by the parties, yet "the same principle of public policy which leads courts to refuse to act, when called upon to enforce them, will prevent the court from acting to relieve either party from the consequences of the illegal transaction. . . . Upon this principle, possession, acquired from an illegal transaction, or by a contract fully executed, will often avail the party holding it, as a sufficient title. Neither party is allowed to impeach its validity by asserting the illegality of his own act. The transaction takes effect from the disability of the parties to assert any right to the contrary. The court does not give it effect, but simply refuses its aid to undo what the parties have already done." In *Connecticut Breweries Co.* v. *Murphy,* 81 Conn. 145, 151, 70 Atl. 450, the court refused recovery on a note given for an illegal sale of a liquor license, saying: "This section applies a well-established principle of common law, which the court must apply notwithstanding the apparent injustice of its operation in the particular case." In *Lokes* v. *Kondrotas,* 104 Conn. 703, 707, 134 Atl. 246, the court refused recovery upon a note where a

part of the consideration was an illegal sale of liquor. To the same effect are *Smith* v. *Crockett Co.,* 85 Conn. 282, 287, 82 Atl. 569; *Sofas* v. *McKee,* 100 Conn. 541, 543, 124 Atl. 380; and *Stacy* v. *Brothers,* 93 Conn. 690, 693, 107 Atl. 613, where it is said: "The general rule as to executed contracts is that if the parties be in *pari delicto* they be left where they have placed themselves." In *Fawcett* v. *Iron Hall,* 64 Conn. 170, 211, 29 Atl. 614, we state the principle as follows: "The courts of this State cannot assist those who prosecute their business contrary to its settled policy, either in the prosecution of that business, or after its prosecution has ceased. Courts of equity will give no aid even in adjusting the accounts of a partnership formed for such purpose."

The fundamental error of the trial court was in holding that this proposition was applicable to the situation of the parties in the present case. In the instant case, we are dealing not with a contract illegal at and from its inception, or with one based upon an illegal consideration, but with an arrangement originally entirely lawful and involving no element of illegality. From the time the parties were married in 1905 until they returned to Waterbury in 1912, the plaintiff turned over to the defendant her earnings under the agreement. There was nothing illegal in this, nor did any violation of law occur. This relation continued between them throughout all the transactions in which they were engaged. The various promises made by the defendant from time to time (as set forth in the finding) to divide with his wife do not, on this finding, constitute new contracts based upon new and independent considerations, but are merely evidential of the original arrangement. Upon their return to Waterbury in 1912, defendant purchased, with their joint funds, a one-half interest in a legal retail liquor

business. No violation of law was contemplated by either party at the time this business was purchased, nor did any occur in connection therewith. In 1914, defendant sold out and from the proceeds bought a one-half interest in a similarly licensed business. It is found that the plaintiff assisted the defendant by bottling beer at their home, which was sold by them. It is not clear whether the beer was sold illegally, or not. The business was lawful and, as far as appears, was entered into by both parties with no intention of violating the law. Where a partnership is formed to prosecute a lawful business, the law is not so inflexible or stubborn as to deprive a complaining partner of all relief, upon the claim of the partner in whose hands the assets are that some part of them may have been realized from unlawful practices incidentally arising in the conduct of the business. *Pennington* v. *Todd,* 47 N. J. Eq. 569, 21 Atl. 297, 11 L. R. A. 589, 590; *Hebbelthwaite* v. *Flint,* 173 N. Y. Sup. 81, 88; 33 C. J. 862. This principle is illustrated in *Philadelphia Loan Co.* v. *Towner,* 13 Conn. 249, 262, where we held that where there was a legal consideration for a contract and afterward a note or bond was given which was void for usury or other illegality, the void instrument would not impair the original contract. If the bottling of the beer in their home was a mere incident to the lawful liquor business carried on by the defendant, this plaintiff is entitled to an accounting from that enterprise. This is primarily a question of fact which we are unable to determine from the finding before us.

It appears that the defendant, without his wife's knowledge or consent, took a part of their joint property and invested it in liquor which he sold at a great profit subsequent to the taking effect of the National Prohibition Act. From the finding, it would appear that the plaintiff must have had some knowledge of

the fact that this liquor was being sold illegally, but we do not think that after he had invested their joint funds without her knowledge or consent for the purpose of prosecuting an illegal enterprise, the wife is without all remedy because some part of the liquor may have been sold with her knowledge. Unless, therefore, this enterprise was undertaken with the knowledge and approval of the plaintiff for the purpose of making money by violating the law, she cannot be held to be in *pari delicto* in this respect.

With reference to the purchase of the farm, it does not clearly appear whether or not it was purchased with the joint funds of the parties. If it was so purchased, the defendant would hold a one-half interest in it in trust for the benefit of the plaintiff. "Real estate belonging to joint adventurers, whether the legal title is in one or more partners, is impressed with a trust for the benefit of the joint adventurers, which follows it until it passes into the hands of a bona fide purchaser." 15 R. C. L. 504; *Lowe* v. *Hendrick,* 86 Conn. 481, 483, 85 Atl. 795.

With reference to the liquor business conducted on the farm, from this finding it would appear that the wife must be assumed to have had some knowledge of it, and so far as the profits shown to have been derived therefrom are concerned she would not be entitled to such profits. *Fryer* v. *Harker,* 142 Iowa, 708, 121 N. W. 526, 23 L. R. A. (N. S.) 477, 484; *Philadelphia Loan Co.* v. *Towner,* 13 Conn. 249, 262; *Phalen* v. *Clark,* 19 Conn. 421, 431; *Central Trust & S. D. Co.* v. *Respass,* 112 Ky. 606, 56 L. R. A. 479, 480.

Upon the facts as found, it does not appear that the conduct of the plaintiff was so tainted with illegality prior to the purchase of the farm that she was not entitled to some at least of the relief she prays. *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 188,

132 Atl. 902; *Dolan* v. *Dolan,* 107 Conn. 342, 348, 140 Atl. 745. The extent to which she is entitled to such relief depends upon a more particular finding of facts than the one before us.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.