[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this law suit the seller of a parcel of real estate is suing a licensed real estate broker to recover a commission paid to the broker who had listed the property and negotiated the sale of the property to a third party. The sale was generated by an unlicensed agent of the broker. Plaintiff's complaint is separated into seven counts. Count I: Wrongful Receipt and Retention of Sales Commission; Count II: Conversion; Count III: Violation of the Connecticut Unfair Trade Practices Act; Count CT Page 14838 IV: Breach of Implied Contract; Count V: Unjust Enrichment; Count VI: Negligence; Count VII: Civil Theft. The plaintiff seeks compensatory damages, costs and attorneys fees, punitive damages as to Count III (CUTPA), and as to Count VII triple damages for civil theft.
The defendant filed an answer and special defenses to all seven counts. The answer denied the operative facts of each count and by way of special defenses alleged that it was the procuring cause of the sale of the property located at 1009 New Haven Road, Naugatuck, Connecticut.
The plaintiff's reply denied each and every allegation of the defendant's special defenses. At the conclusion to the trial the court granted defendant's motion to dismiss only as the Second, Sixth and Seventh Counts. The court directed the parties to submit posttrial briefs due on October 26, 1998, primarily focusing on the following question: Can a real estate broker employ unlicensed sales person to enter into a listing agreement and sell property and retain the commission paid him by the seller who thereafter sues him for restitution of the commission.
 I. The Facts:
On June 26, 1996 the plaintiff and the defendant entered into a contract (listing agreement) whereby the plaintiff granted the defendant the exclusive right to sell property located at 1009 New Haven Road, Naugatuck, Connecticut (Defendant's Exhibit 1).
On that date the defendant was a Connecticut corporation engaged in the sale and brokerage of real estate with a principal place of business in Naugatuck, Connecticut. The defendant was properly licensed in accordance with Connecticut law, § 20-312
of the Conn. General Statutes.
The listing agreement (Defendant's Exhibit I) was executed by the plaintiff owner, Norman Weid, Sr., and Alipio DaSilva, a real estate salesman affiliated with the defendant-real estate broker as an independent contractor (§ 20-311(2) of the Conn. General Statutes. DaSilva was authorized by defendant-broker to sign this listing agreement in its behalf. DaSilva became affiliated with defendant as a real estate salesman in April of 1992. He had a longstanding relationship with the plaintiff-owner and had secured exclusive listings of the New Haven Road property for the defendant on July 19, 1994 (Defendant's Exhibit 6), March CT Page 14839 29, 1995 (Defendant's Exhibit 4), and March 1, 1996 (Defendant's Exhibit 8). On all of these occasions DaSilva was a licensed real estate salesman affiliated with the defendant-broker when he executed these three listings on behalf of the defendant. When DaSilva signed the listing agreement on June 26, 1996 he was unlicenced. DaSilva's license had expired on May 31, 1996 and was not renewed until October 2, 1996.
The listing agreement, Defendant's Exhibit 1, dated June 26, 1996 conformed in all respects to the requirements of subsection b of Conn. General Statutes § 20-325a with the one exception that DaSilva was unlicensed at the time he signed the agreement on behalf of the defendant.
As a result of this listing agreement, the plaintiff entered into a sales agreement dated July 17, 1996 (Defendant's Exhibit 2) with the Naugatuck Valley Savings and Loan Association for a sales price of $360,000. The sales agreement designated the defendant as the sole broker who negotiated the sale as both listing agency and selling agency. In the agreement, the seller agreed to pay a commission of $28,000.
On September 1, 1997, Mr. DaSilva notified the defendant he was terminating his relationship with the defendant as of October 30, 1996. Thereafter DaSilva was relicensed as a real estate salesman effective October 2, 1996 under a new sponsoring broker. The sales agreement between Naugatuck Valley Savings and Loan Association and the plaintiff provided for a closing and transfer of title on October 20, 1996. The property was actually sold to the Naugatuck Savings and Loan Association by the plaintiff on October 28, 1996. Mr. DaSilva attended the closing. On November 5, 1996 the buyer's attorney forwarded a check in the amount of $28,000 in payment of the commission to the defendant.
Prior to the termination of the relationship between Mr. DaSilva and the defendant, the defendant had an agreement in place with Mr. DaSilva requiring him to pay Mr. DaSilva 65% of the commission that was to be received from the sale of the New Haven Road property. At the closing of title on October 28, 1996 the buyer's attorney originally cut two checks in payment of the commission, one in the amount of $18,000 and the other in the amount of $10,000. Subsequently, the buyer's attorney withdrew these two checks and as noted above mailed a check for the full commission of $28,000 directly to the defendant on November 5, 1996. CT Page 14840
On that date the defendant wrote to Mr. DaSilva (Defendant's Exhibit 4) informing him that the West Side Realtors and Appraisers did not intend to pay him a commission for the sale of property located at 1009 New Haven Road, Naugatuck, Connecticut, for the following reasons:
Defendant's Exhibit 4 reads as follows:
 1. As per State of Connecticut Real Estate Law and Regulation which states that in order for a person to receive compensation or commission for any duties performed, the following criteria must be met:
 a. One must be licensed. b. One must have a real estate license at the time when such duties are performed.
 1. At the time a listing contract is signed (Exclusive Right to Sell, June 26, 1996) — at this time you did not possess a license.
 2. At a time a sales agreement is signed (Sales Agreement, June 17, 1996) — at this time you did not possess a license.
 West Side Realtors and Appraisers reserves the right to recover all commissions paid to you from June 1 through September 13, 1996 in accordance with the law."
The court finds from the evidence submitted at the hearing that the sale of 1009 New Haven Road, Naugatuck, Connecticut, was generated through the efforts of Mr. DaSilva.
Conn. General Statutes § 20-312 states that no person shall act as a real estate broker or real estate sales person without a license issued by the Commission. Regulations concerning the conduct of real estate brokers and salesmen provide as follows: "No licensee shall offer, promise, allow, give, pay or rebate directly or indirectly, any part or share of the licensee's commission or compensation arising or accruing from any real estate transaction to any person who is engaging in the real estate business and who is not licensed as a real estate broker or real estate salesman at the time the real estate broker or real estate salesman performed the acts or rendered the CT Page 14841 services for which the licensee offers, promises, allows, gives, pays or rebates such commission or compensation." (§ 20-328a-8a of the Regulations)
At the hearing the plaintiff's attorney called Mr. DaSilva as a witness in his case in chief.
 II. The Plaintiff's Position:
The defendant should not be allowed to retain the sales commission from the sale of the plaintiff's property since its agent Mr. DaSilva was not licensed at the time of the listing agreement or at the time of the sales agreement. Plaintiff contends that West Side should not be allowed to benefit from the illegal act of its agent and that allowing West Side to benefit from the transaction would run counter to the comprehensive statutory scheme which regulates the activities of real estate brokers and sales persons in Connecticut. (Chapter 392 Real Estate Brokers and Salespersons). Section 20-312(a) of the Conn. General Statutes provides that no person shall act as a real estate salesperson without a license issued by the commission. Conn. General Statutes § 20-312(b) provides that no partnership, association, or corporation shall be granted a real estate brokers license unless every employee who acts as a sales person for such partnership, association, or corporation and every sales person who is affiliated with such partnership, association, or corporation as an independent contractor holds a license as a real estate person." Conn. General Statutes § 20-325
states that "any person who engages in the business of a real estate broker or real estate salesperson without first obtaining a license as herein provided shall be fined not more than one thousand dollars or imprisoned not more than six months or both." Conn. General Statutes § 20-325(a) "prohibits any person from bringing an action to recover a commission for work performed when he was unlicenced. No person who is not licensed under the provisions of this chapter and who is not so licensed at the time he performed the acts or rendered the service for which recovery is sought shall commence or bring any action in any court in this state after October 1971 to recover any commission, compensation or other payment in respect of any act done or services rendered by him, the doing or rendering of which is prohibited under the provisions of this statute except by persons dully licensed under this chapter."
The defendant does not dispute that all of these statutes and CT Page 14842 regulations were in place and applied to the relationship between Mr. DaSilva and the defendant at the time the listing agreement in question was entered. The defendant observes, however, that the subject action is not an action prohibited by § 20-325(a) to recover a commission arising out of a real estate transaction since neither Mr. DaSilva nor the defendant are bringing an action for the recover of a commission from the plaintiff in this case. The plaintiff has already paid the commission and this action is one in which the plaintiff seeks restitution, that is, the recovery of a commission already paid for services rendered. The defendant cites testimony from the plaintiff at the hearing, to the effect that he was satisfied with the services rendered, both by Mr. DaSilva and the defendant pursuant to the listing agreement. Plaintiff also testified at the hearing that he suffered no financial harm in the transaction.
Plaintiff acknowledges that he is unaware of any Connecticut cases directly on point adjudicating a real estate broker's right to retain a sales commission in situations where its agent was not properly licensed. Plaintiff relies upon three out of state cases to justify his contention that a listing agreement executed by an unlicensed salesman is illegal and therefore cannot be the basis for the retention of the commission by the licensed broker in whose name the contract was executed. These three cases areFirpo v. Murphy, 72 Cal.App. 249, 236 P. 968 (1925); CertifiedRealty Company v. Reddick, 253 Or. 617, 456 P.2d 502 (1969); and Farragut Baggage Company, Appellant v. Shadron Realty, Inc., 18 Az.App. 197 P.2d 38 (1972).
In all of these three cases the plaintiff was the broker who was suing for a commission allegedly owed by the person to whom services were rendered by an unlicensed salesperson affiliated with the broker. In each instance local law not dissimilar to Connecticut's real estate law prohibited the recovery of a commission by an unlicensed salesman. In all three cases the plaintiff broker prevailed at the trial level only to be reversed by the Appellate Court. In Firpo California law at the time provided in substance that it shall be unlawful for any person, partnership or corporation to engage in the business or act in the capacity of a real estate broker or real estate salesman without first obtaining a license. The law also made it a criminal offense to act as a salesman without a license and made it unlawful for any unlicensed broker to pay a commission for performing any of the acts specified to any person who is not a CT Page 14843 licensed broker or salesman. A further section of the California law denied to any person, copartnership or corporation engaged in the business of acting in the capacity of a real estate broker or real estate salesman the right to maintain any action in the courts of this state for the collection of compensation for performance of any of the acts. It also provided that a salesman's license shall remain in the possession of the employing broker until it is canceled or employment terminated. The California Appellate Court concluded that it was manifest from the various provisions of the act that the law charges the employer (the broker) with knowledge of the fact whether his salesman has or has not a license. The court concluded that whenever a statute is made for the protection of the public, a contract in violation of its provisions is void. The Appellate Court reversed the decision for the plaintiff-broker in this case concluding that a contract in violation of a statute made for the protection of the public is void.
The second case which plaintiff relied upon was CertifiedRealty Co. v. C. Reddick and Laura M. Reddick, Appellants,253 Or. 617, 456 P.2d 502. This case was decided in Oregon in 1969 with the Oregon court relying on Washington law. At the trial level an action by a real estate broker to recover a sales commission resulted in a verdict for the plaintiff broker who was awarded a commission of $6500. The Oregon Supreme Court reversed holding that the act of the real estate broker's agent in obtaining a listing agreement in Washington while not licensed under Washington law, constituted illegal conduct precluding recovery of commission by the broker even though the agent obtained a license prior to consummation of the exchange of the property and the broker himself was licensed in Washington. The Oregon court reviewed Washington Law which provided that no suit or action shall be brought for the collection of compensation for the performance of any of the acts mentioned in § 8340-5 (requiring a license to act as a real estate broker). Washington law made it unlawful for any person to engage in the business or act in the capacity of a real estate broker within the state without first obtaining a license and that it was a misdemeanor for any person to act as a real estate broker within the meaning of the act without a license and that performance of the act of providing services without a license was illegal and that when the plaintiff, to make a case, must rely upon an illegal contract or upon the performance of an illegal act he cannot recover.
In a 1972 decision of the Court of Appeals of Arizona in the CT Page 14844 matter of Farragut Baggage and Transfer Company, Appellant v.Shadron Realty, Inc., 18 Ariz. App. 197, 501 P.2d 38, a real estate broker brought an action against a lessee to recover for a breach of agreement to pay the brokerage commission. The Superior Court granted the broker's motion for summary judgment and the lessee appealed. The Court of Appeals reversed holding that where a salesman who negotiated a lease performed certain acts requiring a real estate salesman's license while he was unlicensed, the real estate brokers could not recover commission arising from the lease negotiated by the salesman even though the salesman was licensed at the time the lease was executed. In reaching its decision, the Court held that the purpose of the statutes relating to licensing of those engaged in real estate activities is to protect the public from unscrupulous and unqualified persons and judicial aid is unavailable to collect commissions sought to be collected in violation of the law. The Court noted that Arizona law made it unlawful for any unlicensed real estate broker to employ directly or indirectly any person for performing any of the acts within the scope of this chapter who is not a licensed real estate salesman under the broker employing him. The law provided that it was unlawful for any person to engage in the business of real estate broker or salesman without first obtaining a license. The law also provided that one who acts as a salesman without being licensed is subject to punishment by imprisonment or fine. Arizona law also imposed the criminal sanction on a broker who does not employ legally licensed salesmen. Finally, the Court held that the record established that the plaintiff's claim for commission was tainted with illegality in that the salesman performed acts requiring a real estate salesman's license while he was unlicensed.
The plaintiff notes that the case at bar is slightly different than those cases which he has cited in that the above cases involve brokers attempting to recover unpaid commissions while the present case involves a seller attempting to recover a commission that has already been paid. Plaintiff asks the court to hold that since Westside's agent committed an illegal act, namely engaging in real estate business without a license, Westside is not entitled to retain the sales commission it received following the closing transaction for this property. He argues that Westside should not be allowed to profit from the actions of its agent which were performed in violation of the statute and public policy prohibiting people from engaging in the real estate business without a license. CT Page 14845
There is authority in Connecticut for the proposition that the court will deny a remedy for breach of contract where the plaintiff performed services as an architect without having the license required by § 20-290 of the General Statutes. In that case the trial court entered a judgment for the plaintiff which was reversed by the Appellate Court, holding that the contract was illegal and therefore unenforceable. Design Development, Inc.v. Brignole, 20 Conn. App. 685 (1990). The Design Development
court cited Vaszauskas v. Vaszauskas, 115 Conn. 418 1932), where the Supreme Court stated, "In case any action is brought in which it is necessary to prove the illegal contact in order to maintain the action, the courts will not enforce it nor will they enforce any alleged right springing directly from such contract, but if both parties are in pari delicto the court will leave it where it finds them. Id. 423.
In Cimmino v. The Town of Trumbull, No. 293612 (1994), Conn. Sup. 2051. 11 CONN. L. RPTR. 148, 9 CSCR 305 No. 293612 Sup. Ct. of Fairfield at Bridgeport, Feb. 28. 1998, the Court stated. "It is a basic tenet of contract law that a court will not grant relief based upon a contract that is against public policy. Collins v. Sears Roebuck Co., 164 Conn. 369, 377 (1973); Beit v. Beit, 135 Conn. 195, 198
(1948); Avco Corp. v. Preteska, 22 Conn. Sup. 475, 478 (1961)." Generally, "a contact made in violation of a statute is illegal and unenforceable, and it is usually immaterial whether the thing forbidden by statute is malum in say or malum prohibitum" C.J.S.,Supra 201.
 III.
The defendant has offered the court no Connecticut authority directly on point with regard to the facts in this case. The defendant, like the plaintiff, relies upon three out-of-state cases in which the court has denied recovery to plaintiffs seeking refunds of commissions paid to brokers who utilized the services of unlicensed salesmen in completing sales of real estate which was listed with the broker.
The three cases relied upon by the defendant in this case areBushbaum v. Baron, 1 N.J.Sup. 4. Appellate Div. Of Superior Court (1948); Main v. Taggares, 8 Wash. App. 6 (1972); and Knight v.Johnson, 741 S.W.2d 842 (1987) Mo. Court of Appeals. In Bushbaum the plaintiff engaged defendant as a business broker to find a purchaser for a small business which CT Page 14846 was conducted on a leased premises in Emerson, New Jersey. Defendant succeeded in doing so and plaintiff sold the business. The purchase price passed through defendant's hands, first the initial deposit, then the balance of the price when the bill of sale was delivered. The defendant retained his agreed commission and handed over the rest of the money to plaintiff. Two months later plaintiff instituted a suit for money so retained and was awarded judgment by the trial court on the ground that the defendant had not been entitled to any commission, as he was prohibited by the statute from participating as a broker in the transaction since it included a transfer of the leasehold and defendant did not have a real estate broker's license. The Appellate Division reversed the decision of the trial court, holding that this is not a suit by a broker for his commission but is an action by the broker's client to recapture the commission which has already been paid. The court decided that the case fell within the rules governing voluntary payments made under a mistake of law or pursuant to an illegal bargain. The court stated that generally the one who has made the payment is not entitled to restitution. Citing Restatement of Restitution § 45 and 47. The courts further stated that the entire transaction had been executed and that the plaintiff received from the defendant full performance and paid only what he had promised to pay.
In Main v. Taggares the trial court held valid an agreement by which Main, the plaintiff, agreed to pay Taggares, defendant, $28,000 less certain expenses. The contract was made contemporaneously and in connection with a real estate sales agreement between plaintiffs and a third party. The plaintiff contended in the trial court the contract with defendant was for a real estate broker's commission to which defendant, having no real estate broker's license, legally was not entitled. The plaintiff sought a refund of $6000 previously paid defendant under the contract. The trial court held that the defendant was entitled to the $6000 and required the plaintiff in the future to pay such sums as he had agreed upon with the defendant in their contract. The Court of Appeals of Washington reversed. The Appeal Court found that the dispute in this case is legal not factual. In so holding the Washington Court reviewed Washington law concerning real estate brokers. The Court agreed that the defendant had acted as a real estate broker. The Court found that the defendant did not have a license to operate as a real estate broker at any time involved in the matter and found that he was in violation of Washington law which required that it shall be CT Page 14847 unlawful for any person to act as a real estate broker, associate real estate broker or real estate salesman without first obtaining a license. Washington law also prohibited an unlicensed person from bringing a suit or action for a commission and found that this law barred the defendant from collecting any further sums under the compensation agreement. The court stated that neither the statutes nor the case law gives one who sells his land by an unlicensed broker the right to sue for a refund of a commission once paid even though the law prohibits a suit for compensation by one not licensed as a real estate broker and makes it a misdemeanor to act as a real estate broker without a license. The court found that this law was penal in nature and must be strictly construed. In so finding, it stated that "when the law imposes a punishment which acts upon the offender alone it is not a reparation to the party injured . . . it will not be presumed that the legislature intended the punishment to extend farther than is expressly stated." Citing Sutherland StatutoryConstruction, § 3303 at 236 (Third Ed.) F. Horack 1943. The court stated that the legislative act before us is not remedial in nature and does not afford a remedy to a party who deals with an unlicensed broker. The act, penal in nature, was passed by the legislature to assure the fiscal responsibility and competency of realtors and that the statute in this case does not expressly void contracts entered in by unlicensed brokers but rather prohibits those brokers from suing to recover a commission.
The final case cited by the defendant on this topic is Knightv. E.H. Johnson, Missouri Court of Appeals 1987. In this case the plaintiff-broker in his complaint alleged that he had agreed with the defendant that if he located a buyer for defendant's car wash, defendant would pay him 10% of the gross sales price; that he located buyers who purchased the car wash for $150,000; that he received $6881.84 of the $15,000 commission from defendant and that he demanded the balance of $8118.16 but the defendant refused to pay. In essence the action was an action by an agent against a seller for a balance of commission and the seller counterclaimed to recover money already paid. The Circuit Court for St. Louis County granted summary judgment against both claims and both parties appealed. The court of Appeals held that the sale of the business was contingent on assumption of a lease of real estate and plaintiff who was not licensed as a real estate broker or sales person was barred from suing for commission but the seller was not entitled to recover money already paid pursuant to a listing agreement illegal under the Real Estate Broker's License Act. CT Page 14848
The trial court held that the plaintiff was not a licensed real estate broker or real estate salesperson and as a matter of law the contract was unenforceable. In granting summary judgment to the plaintiff on the defendant's counterclaim, the court stated that a court will not aid either of two parties to an illegal contract but will leave them where it found them. Missouri law, similar to Connecticut law, provided that no person, copartnership, corporation or association engaged within this state in the business of acting in the capacity of a real estate broker or a real estate salesman shall bring or maintain an action in any court in this state for the recovery of commission for services rendered in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person, copartnership, corporation or association was a licensed real estate broker at the time when the alleged cause of action arose. In sustaining the trial court's decision to deny the defendant recovery of the portion of the commission he had already paid to the plaintiff, the Appellate Court quoted from an annotation 74 A.L.R.3rd 637, 642 1976 to wit: "As a general rule one who has paid money to an unlicensed broker in consideration of the performance of a contract by such person is not entitled to recover back the money so paid on the ground that the contract was illegal because the person did not have an occupational or business license to permit which he was required by law to have." Missouri law provided that it is "unlawful for any person not licensed under this chapter to perform any act for which a real estate broker or salesperson's license is required." The Act is designed to protect the public from Fraud and from being misled. While not an exact counterpart of the Connecticut law it is essentially the same.
A review of 74 A.L.R.3rd 637 (1977) indicates that the general rule denying recovery is that in the absence of a statute providing for recovery the cases generally hold that one who has paid money to an unlicensed person in consideration of the performance of a contract by such person is not entitled to recover back the money so paid on the ground that the contract was illegal because the person did not have an occupational or business license or permit which he was by law required to have. The bases of such holdings are that the law requiring the license does not specifically provide for such a right to recover back money paid, that the sanctions of such law are penal in nature and must be strictly construed, that the specification by such CT Page 14849 laws are particular penalties such as making a violation a misdemeanor and providing suits for compensation for the unlicensed service preclude the construction of the statute as embracing of a loss of a right to retain compensation which has been paid under the rule of unius est exclusio alterius, the allowance of recovery back not being necessary to effectuate the policy of the licensing statutes and to the conclusion that equity and the principles of restitution do not require that the money be paid back."
The court finds another case particularly pertinent to these considerations. This is the case of Comet Theater Enterprises,Inc. v. Cartright, et al., U.S. Court of Appeals 9th Cir. 1952,195 F.2d 80, [195 F.2d 80]. In Comet, the plaintiff sued Cartright and others on a common count for money not received. The District Court for the Southern District of California rendered judgment adverse to the plaintiff and the plaintiff appealed. The Court of Appeals held that notwithstanding defendant's failure to comply with California licensing requirements, plaintiff cannot retain the value of the services rendered by defendant and also recover the fair amount paid for such services. Comet had sought recovery for money voluntarily paid to the defendants for their full performance of a contract for services of a supervisory nature rendered in connection with the construction of a drive-in theater. Comet contended that it was entitled to judgment because, as admitted, the defendants were not licensed under California business and professionals code. The Court agreed that contractors were required to procure a license under California law and that the affect of a contractor's failure to get a license resulted in a contract made by an unlicensed contractor to be illegal and void. However, the only sanction provided by the California law was that failure to get a license was deemed a misdemeanor and prevented the contractor from suing to recover compensation for services and goods furnished to another person. In analyzing the California law, the court found that there was no provision in the act that when an unlicensed person has completely performed a contract for agreed services and the person so benefitted [benefited] voluntarily is paid, the agreed consideration, he may recover back the money so paid. In interpreting the statute, the court refused to grant a right in common to retain the value of the services of the contractor and also to recover the fair amount that Comet had paid for its services, finding it was not necessary to effectuate the policy of the statute. In this case the court referred to the rule of CT Page 14850 expressio unius est exclusio alterius. The Court also found that Comet voluntarily paid the consideration for what it received, acting under a mistake of its legal rights. The Court said had Comet, when it had paid the contractor for their services, known of its legal power under the law to refuse payment and to set up a section of the law as a perfect defense to any action brought by defendants, it then would have refused. The court was referring to the section of the law which provided that no person engaged in business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter. The court made a specific finding that the plaintiff in this case was not in pari delicto with the defendant, citing California rule that one for whose benefit as statute is passed cannot be in pari delicto. The court did not base its holding on the Restatement of Contracts 598 providing that a party to an illegal bargain can neither recover damages for breach nor recover back the performance he has rendered because it specifically found that the contractor in this case was not in pari delicto. One basis for the court's decision was the Restatement of Restitution, § 45, which indicates that a person who induced thereto solely by mistake of law has conferred a benefit upon another to satisfy in whole or part an honest claim of the other to the performance given is not entitled to restitution. The court also distinguished the Restatement of Contracts § 604 that where the parties to an illegal contract are not in pari delicto and one of them has not been guilty of serious moral turpitude he may recover the value of any performance which he has rendered. The court found that the statement of the rule implies that the other party has been guilty of serious moral turpitude and found it did not apply in this case, finding no proof of moral turpitude or anything other than the defendant was without a license as required by California law. Comet had strongly contended that the statute had been passed for its benefit and that recission and restitution are necessary to protect its rights. The court declined to accept this contention, noting that the Restatement of Contacts § 601 provides for such relief only where its refusal will harm the parties for whose benefit the statute making the contract exists. The court could not perceive how such refusal case would harm the plaintiff since there was no proof that the services which were rendered to him were defective or that he in any other way did not receive value for the money he had paid. It then stated that there was no equitable reason for invoking restitution where the plaintiff gets the exchange for CT Page 14851 which he expected. The court finds the reasoning of the Comet
case very persuasive in the subject case.
The court concludes from the facts found in this case that a judgment for the plaintiff would not justified. The contract between the parties was fully executed with each party receiving the exact benefits of their bargain. The plaintiff received the price at which he listed his property and the broker received the commission specified in the listing contract. The court cannot make a finding that the plaintiff was harmed financially by the fact that DaSilva was unlicensed when he took the June 26, 1995 listing on the property. The plaintiff, acting through his attorney, voluntarily paid this commission to the broker on November 5, 1996, subsequent to the closing of title on October 28, 1996. Plaintiff was represented by counsel at the closing. At the closing the salesman DaSilva was in attendance. Counsel for the plaintiff initially cut two checks for the broker's commission on that date but did not deliver them to the defendant.
At all times that the property was listed with defendant's agency the defendant was licensed as required by Connecticut law. The salesman DaSilva was licensed on July 19, 1994, March 29, 1995 and March 1, 1996 when he took listings on behalf of defendant for the subject property. He was not licensed when he took the June 26, 1995 listing which ultimately succeeded in producing a sale. DaSilva had a longstanding relationship with the plaintiff which is evidenced by the various listings he took from him. The court concludes that his services, some of which he performed while licensed, and some while unlicensed, was the primary factor in producing the sale of the property. Testimony as to whether or not defendant was aware that DaSilva's license had expired was conflicting. The court finds credible defendant's testimony that he was not so aware. At any rate, the real estate statutes and regulations do not impose a duty on a real estate broker to ensure that his salesman will maintain an active license. No evidence was produced at the hearing to suggest any inappropriate conduct, misrepresentation, lack of professionalism or moral deficiency on the part of either the salesman, DaSilva, or the broker defendant.
The comprehensive code governing real estate salesmen and brokers found in Chapter 392 of the General Statutes contains no specific provision authorizing restitution to an owner who has voluntarily paid a commission to a licensed broker where the real CT Page 14852 estate transaction generating the commission has resulted from the efforts of an unlicensed salesman. The statutory scheme found in Chapter 392 does provide a number of penalties to discourage unlicensed activities: Section 20-325 of the General Statutes authorizes fines and imprisonment or both; Section 20-325(a) prohibits actions to recover commissions by brokers or salesmen who are unlicensed; Section 2-328-8a of the regulations concerning the conduct of real estate brokers and salesmen prohibits licensees from sharing a commission with any person who is not licensed. Insofar as the plaintiff relies on § 20-325(a) of the General Statutes, the legislative history indicates that the statute was enacted specifically to protect the unsophisticated home buyer. Conda v. Cristensen,11 Conn. App. 557, 563 n. 3 (1987). Moreover, this action is not an action to recover a commission by a broker.
These reasons convince the court that it should deny restitution and other relief demanded by the plaintiff. Accordingly, the court finds the issues for the defendant on Counts I, III, IV and V. The court has previously dismissed Counts II, VI and VII.
Dorsey, J. State Trial Referee